AMERICAN LEAGUE BASEBALL CLUB OF NEW YORK, INC., Plaintiff, *v.* JORGE PASQUEL et al., Defendants.

Supreme Court, Special Term, New York County, May 20, 1946.

*Louis F. Carroll, Mark F. Hughes, Pierce J. Gerety* and *Joseph Moskovitz* for plaintiff.

*Hardin, Hess & Eder* for Bernardo Pasquel and another, defendants.

*Sackett, Chapman, Brown & Cross* for Claire R. Rennie, defendant.

MILLER, J. This is a motion by the American League Baseball Club of New York, Inc., popularly known as the " New York Yankees ", for a temporary injunction restraining the defendant Mexican League and various individuals alleged to be acting in its behalf, from inducing or attempting to induce plaintiff's baseball players to repudiate their contracts of employment with plaintiff.

The motion papers have been served on the Mexican League, on Bernardo Pasquel, its vice president, and on defendants Baz, Lusac and Rennie. The only answering affidavits submitted are those of Pasquel, Rennie, and Hess, one of the attorneys for some of the defendants. Pasquel's affidavit is submitted on behalf of himself and Lusac. Although he denies that he at any time attempted to induce any of plaintiff's players to repudiate their contracts with plaintiff, he does not dispute the statements in the moving affidavits to the effect that he had

stated at a press conference on May 3, 1946, that one of the plaintiff's players, Rizzuto, "will leave the Yankees and go to Mexico when I give the word" and that "I will not leave New York without taking a Yankee regular of the first rank with me."

Pasquel also admits that he did contact another Yankee player, Stirnweiss, and that he made him an offer. He states that when Stirnweiss, several days later, advised him that he had a two-year contract and could not accept the offer he ceased making further efforts to obtain Stirnweiss' services. He makes no statement, however, that he was unaware of the existence of Stirnweiss' contract prior to making the offer, and his version is consistent with the possibility that he ceased making further efforts to sign up Stirnweiss only because the latter had rejected his offer. In any event, as later pointed out, the existence of contracts for definite terms is immaterial, it being sufficient that plaintiff's employees were serving it at the time of the attempts to entice them away.

On the papers now before the court there is ample evidence that Pasquel and the Mexican League have attempted and in all probability will, unless injunctive relief is granted, continue to attempt to entice away plaintiff's players.

The answering affidavit of the attorney Hess is submitted in support of the affirmative defense that the contracts between plaintiff and its players are so inequitable and monopolistic in character as not to warrant the intervention of a court of equity for their enforcement. Stress is laid upon the alleged fact that once a player has been signed by a club his career is from that time on in the absolute dominion of the club, and that he has no right to determine with what club he plays, in what city he must reside, or the salary he is to receive as long as he wishes to remain in organized baseball.

Attempts of the defendants to induce plaintiff's players to leave their employment with plaintiff are wrongful and illegal under well-settled principles of law, and this is so regardless of whether the contracts between plaintiff and its players would be enforcible in actions between the parties to the contracts (see *Hardy* v. *Erickson*, 36 N. Y. S. 2d 823, 825, and cases there cited; Restatement, Torts, § 766, p. 54). It is not "essential that the contract should be of such a nature that specific performance could be decreed." (43 C. J. S., Injunctions, § 89.) Malicious attempts to induce employees to leave their employer are illegal even if there is no contract for a definite term between them and their employer and their employment is terminable at

will (*Truax* v. *Raich*, 239 U. S. 33, 38; *Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229, 251–252; *Hardy* v. *Erickson*, *supra*; 43 C. J. S., Injunctions, § 89, pp. 597–598).

The rationale of these authorities is well summed up in the language of Mr. Justice Hughes in *Truax* v. *Raich* (*supra*, p. 38): "The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will."

The case of *Hitchman Coal & Coke Co.* v. *Mitchell* (*supra*) was questioned in *Stilwell Theatres, Inc.*, v. *Kaplan* (259 N. Y. 405), but only in connection with the application of the doctrine of malicious inducement of breach of contract to labor unions in the course of labor disputes.

For the reasons heretofore indicated it is unnecessary, for the purposes of this motion, to consider whether the plaintiff could successfully sue in equity to compel any of its players to perform their contracts with it, or to enjoin them from violating their contracts by playing baseball for others. The important circumstance to be borne in mind is that plaintiff is seeking to enjoin strangers to the contract from attempting to induce players *theretofore voluntarily performing their agreements with plaintiff* to discontinue doing so.

The defendant cites *Fairbanks, Morse & Co.* v. *Texas Electric Service Co.* (63 F. 2d 702) as authority for denying injunctive relief against interference by a stranger with a contract which is contrary to public policy and monopolistic in character. That case involved a public utility company, a business which was affected with a public interest, and which monopolized the electric light business in each community that it served in direct violation of a Texas statute. It was held that under the circumstances solicitation of the company's customers by the seller of a proposed municipal electric plant would not be enjoined.

In any event, no real proof that organized baseball is an illegal monopoly is submitted on behalf of the defendants. The scant and fragmentary factual statements contained in the affidavit of Hess fall far short of establishing any such monopoly. Although the affidavit characterizes organized baseball as an illegal monopoly, the facts therein stated at most show that an individual ballplayer's freedom of contract is restricted and

limited. The ruling in *American League Baseball Club* v. *Chase* (86 Misc. 441) relied upon by defendants, was based upon factual data wholly absent in the case now before the court, and involved only the contracting parties. The decision in question was rendered in 1914, and what was said by the court there on the monopoly question was only dictum, for the conclusion had already been reached that plaintiff was not entitled to a decree of specific performance against its employee by reason of alleged lack of mutuality of obligation and remedy.

Organized baseball has been in existence for many decades. The plaintiff's activities involve the rendition of services. Even if organized baseball, as claimed by defendants, be a monopoly, it would seem that it is not a combination in restraint of trade, either under the provisions of section 340 of the General Business Law, known as the Donnelly Act, or at common law. (See *N. Y. Clothing Mfrs. Ex., Inc.,* v. *Text. Fin. Assn., Inc.,* 238 App. Div. 444.) In the case cited the court said (p. 452) : " Only the performance of services is involved. We think this agreement is valid as an agreement for the rendition of services, and that it is in no sense in restraint of trade, as used in the statutory enactments or at common law."

There is no justification, on a motion of this character for a preliminary injunction, for denying plaintiff relief on the basis of the factual evidence submitted in support of defendants' conclusory characterization of organized baseball as an illegal monopoly.

The motion, so far as it affects the defendant Rennie, is deemed withdrawn, as the action against him has been discontinued. The motion is granted as to the defendants Bernardo Pasquel, Mexican League and Lusac. The trial of the action, by agreement of the parties, is set down for the 28th day of May, 1946.