Owen McGivern, J.
Fine Sound, Inc., a defendant in the principal suit, and plaintiff in the counterclaim interposed herein, has brought on this motion for an injunction pendente lite restraining each of the defendants named in said counterclaim (1) from engaging directly or indirectly, in any business in competition with Fine Sound, Inc., and (2) from using the name “Fine Recording, Inc.” or any other name containing the word “Fine”.
Preceding this motion, the plaintiff in the principal suit, one C. Robert Fine, a well-known expert and pioneer in the field of sound recording and re-recording, brought suit against Arthur Loew, M.G-.M International Films Corporation, Fine Sound, Inc., Perspecta, Inc., Paramount Pictures Corp. and Warner Bros. Pictures, Inc., for the sum of $30,000,000 damages allegedly sustained by the wrongful conduct of the defendants. It is alleged by Fine that he was the inventor of a process generally known in the motion picture industry as Perspecta Sound, and that prior to the 27th day of August the defendant Arthur Loew, for the purpose of inducing the plaintiff to reveal to him the teachings of this process, represented to the plaintiff that if he would give him and/or the defendant M.G-.M. International Films Corporation control of the said invention, the defendant Arthur Loew would obtain wide industry acceptance for it, and that the defendants Loew and M.G-.M. would exploit the same for the mutual benefit and enrichment of the plaintiff and M.G-.M.
*247 The plaintiff Fine further claims that at the time said representations were made, unlmown to him, it was not the intention of the defendants Loew or M.G-.M. to exploit said invention for their mutual benefit, but, on the contrary, to the exclusion of plaintiff without payment of adequate compensation.
The complaint of Fine further states that prior to the 27th day of August, 1953 the defendant Loew stated that if Fine would assign to Fine Sound all his interest in the invention and cause the subscribers of the stock of Perspecta (a corporation controlled by Fine) to transfer their subscriptions to Fine Sound, and if he would permit his sole shareholder interest in Fine Sound to become a minority shareholder interest therein, such action would facilitate the exploitation of plaintiff Fine’s invention for their mutual benefit.
Belying on the truth of such representations Fine alleges he entered into such an agreement as suggested by Loew, with the understanding he would appoint two of the five directors of the plaintiff-by-counterclaim, and that he would be employed for an initial period of three years. Plaintiff Fine further alleges that the defendant Loew and the defendant M.G.M. and its affiliated corporations utilized the invention in the production of motion pictures both in the United States and abroad, without payment to the plaintiff therefor and with the intent and effect of deriving the benefits thereof to the exclusion of the plaintiff Fine.
In the counterclaim it is alleged that Fine also held the office of president of the plaintiff-by-counter claim “until his resignation or purported resignation on or about November 12, 1956”. The counterclaim further alleges that pursuant to the agreement made on August 27, 1953, Fine designated a codefendant-bycounterclaim, one Murray Oppenheim (his personal attorney), as a director of plaintiff-by-counterclaim, and that Fine and Oppenheim entered upon a conspiracy to injure Fine Sound by the surreptitious organization of the defendant-by-counterclaim Fine Recording Inc., on or about September 14,1956 in violation of the fiduciary duties owed by defendants-by-counterelaim Fine and Oppenheim. The counterclaim also alleges that in pursuance of the conspiracy, the individual defendants-by-counterclaim induced several of the employees of the plaintiff-by-counterclaim, who were skilled specialists, to leave the employ of the plaintiff-by-counterclaim and to enter the employ of the defendant-by-counterclaim Fine Recording Inc.; also that they spread derogatory rumors among the remaining employees of plaintiff-by-counterclaim, and disclosed to them confidential corporate infor *248 mation, thereby impairing the loyalty of such employees; and that the defendant-by-counterclaim have diverted business into their own corporation, Fine Recording Inc.
It is also the position of the counter-claimant that the name “Fine Sound, Inc.” as well as the word “Fine” have acquired a secondary meaning; further, that the plaintiff-by-counterclaim, apart from its paid advertising, has received a large amount of free publicity through the influence of M.G.M. International, a wholly owned subsidiary of Loews. Fine, to the contrary, claims that this publicity was predominantly about him personally, and he has submitted the affidavits of some recognized personages in the world of music and television who assert that Fine has established a singular reputation, separate and apart from any corporation.
On the basis of the submission before it, this court is of the opinion that the plaintiff-by-counterclaim, particularly considering the short period of its existence, has failed to establish, at this time, such proof of a secondary meaning attributable to its corporate name “Fine Sound, Inc.” as to warrant the issuance of an injunction pendente lite on such ground.
Coming now to the termination of Fine’s employment, he claims he was discharged over the opposition of his representative on the board of directors. The minutes of this July 23 meeting of the board of directors show that Fine was paid for the unexpired term of his employment contract, which was to terminate September 28,1956, a period some 14 days subsequent to the organization of the corporate defendant-by-counterclaim on September 14, 1956. The reason assigned for the discharge of Fine on July 23 was “Fine’s threatened legal action against the company,” denied by Fine, and also Fine’s refusal to reconcile his differences with one Elmer 0. Wilschke, presently' executive vice-president, in charge of administration and operations.
Mr. Murray Oppenheim, Fine’s personal attorney, spates that early in July of 1956 he indicated to Mr. George Muchnic, an officer of Fine. Sound, and a director designated by M.G.M., that if Mr. Loew insisted on discharging Fine, Fine would have no alternative but to “necessarily go into the same business which he had always been engaged in, that is, sound recording, and that if he did so, it would naturally follow that the accounts that were attached to him would follow him.” In this conversation Mr. Muchnic allegedly said that he was completely unconcerned about Mr. Fine’s leaving since engineers were a “dime a dozen”, and that none of the Fine Sound, Inc. accounts were dependent upon Mr. Fine. Mr. Muchnic in his supplementary reply affi *249 davit concedes knowledge in early July that Fine’s relationship might be seyered, but he denied that he knew at that time that Fine would ultimately go into a competing business.
Subsequent to Fine’s discharge, his attorney, Oppenheim, proceeded to organize Fine Recording Inc. for the purpose of doing business in the field wherein Fine, apparently, had devoted his entire adult lifetime, and also had acquired much fame and prestige. Mr. Oppenheim "and the other defendants-by-counterclaim deny that this corporation was “surreptitiously” formed and assert: “The executive officers of Fine Sound, Inc. knew and were informed that Mr. Fine would have no alternative other than to go into business for himself and that this business would be the business of sound recording.”
Following the formation of the corporate defendant-by-counterclaim on September 14, 1956, Fine resigned as a director of the Fine Sound while Oppenheim resigned at the end of November, after the bringing on of this motion by notice dated November 21, 1956. In its brief in support of this motion it is contended that “Fine as 49% stockholder, continues to be, in equity, a co-partner with his co-stockholder and therefore a fiduciary,” citing Gallagher v. Perot (112 Misc. 717, affd. 200 App. Div. 867, affd. 234 N. Y. 516) for the proposition that where the stock of a corporation was closely held “a court of equity has power to disregard the corporate entity” to the same effect as if defendant stockholders were proprietors. (See, also, Carney v. Penn Realty Co., 174 App. Div. 86.) This contention, however, under the circumstances, necessarily weakens its position that the conduct of Fine and Oppenheim should be predicated upon their technical continuance, as sterile and perhaps, in a sense, captive directors of Fine Sound, Inc. In the light of this it seems unrealistic and inequitable to hold them to the strict classical restraints imposed on directors. If there is merit to Fine’s complaint that Fine Sound, Inc. is now the vehicle for the fulfillment of the alleged fraudulent conspiracy of Arthur Loew and M.Gr.M. to deprive him of his rights, there cannot summarily be excluded the notion that the plaintiff-by-counterclaim may not be coming into this court with ‘‘ clean hands.” This court cannot on this preliminary motion, and on the facts before it, make full determination on this sharp issue of ‘ ‘ clean hands. ’ ’ The over-all facts, and the respective charges made, moreover require this court to exercise restraint in the exercise of its powers to grant the drastic and summary remedy of an injunction pendente lite, absent a clear showing of necessity and justification (McClure v. Leaycraft, 183 N. Y. 36, 41). A temporary injunction may be refused under circupistapces *250 where a permanent injunction might be granted (Port Chester Wine & Liquor Shop v. Miller Bros. Fruiterers, 1 N. Y. S. 2d 336, revd. on other grounds, 253 App. Div. 188; 254 App. Div. 780, affd. 281 N. Y. 101; Heights Democratic Club v. Brewer, 187 Misc. 616).
This court is likewise not prepared to accept the view that the name “Fine Recording Inc.” is confusingly similar with the name “ Fine Sound, Inc.” The word “ recording ” is a term of general description in the field of sound recording, sufficiently dissimilar in physical appearance and aural apprehension from the word “sound” to preclude possibility of confusion. The plaintiff-by-counterclaim concedes that “The field in which these two companies compete is very limited, the number of customers for master recordings is very small, and the competition for accounts is intense”. The likelihood of confusion is further minimized not only because the services of both the corporations are of a highly personal nature but also because the trade name of the respective corporations is not, in the ordinary course of business, impressed upon the product (records) which are ultimately sold to the public.
The plaintiff-by-counterclaim purports to set forth 10 instances of confusion of the respective corporate names, but there is no adequate showing that these instances of alleged confusion resulted in customers doing business with the defendant-by-counterclaim in the misbelief they were dealing with the plaintiff-by-counterclaim — nor does it appear that any customer of the plaintiff-by-counterclaim was unknowingly diverted to the doing of business with the corporate-defendant-by-counterclaim. This court fully appreciates that proof of actual confusion and “palming off” is not always imperative to the issuance of an injunction; however, as an alternative, a showing of a likelihood of confusion, or intent to deceive or some fraud upon the public has generally been required. It is within the framework of the latter theory that the cases of Sullivan v. Sullivan Radio & T.V. (1 A D 2d 609) and Taendsticksfabriks Akticbolagat Vulcan v. Myers (139 N. Y. 364) were decided. The showing made by plaintiff-by-counterclaim is insufficient to warrant the issuance of an injunction pendente lite, particularly where there is no evidence that “any act or course of conduct upon the part of the defendants or either of them caused or occasioned the claimed confusion”. (Smith Victory Corp. v. Smith, 22 N. Y. S. 2d 159, 162, affd. 259 App. Div. 1070.)
The plaintiff-by-counterclaim seeks to bring the case at bar within the framework of those cases holding that where an individual has lent or conveyed his name for a consideration, *251 he is estopped from using his name in derogation of his grant (see Higgins Co. v. Higgins Soap Co., 144 N. Y. 462; Guth v. Guth Chocolate Co., 224 F. 932 [C. C. A., 4th]). But a distinction may be drawn between such cases and the instant case. The line of cases in support of this doctrine of estoppel largely treats of situations dealing with the sale of products to the public involving some possible deception. On the record before this court, it appears that the enterprise at hand is more in the category of personal services. And this court does, in its discretion, rest the denial of an injunction against the use of the corporate name Fine Recording Inc. or any name containing the word “Fine” on the ground that it is, under the circumstances here presented, the duty of this court to maintain the status quo pending a determination of the issue of “clean hands.”
Nor is there merit to that branch of the motion which seeks to restrain the defendants-by-counterclaim from entering into or carrying on any business in competition with plaintiff-by-counterclaim. The moving party does not contend that Fine ever agreed that he would not compete with the plaintiff-by-counterclaim following the termination of his period of employment. The employment contract executed between “Fine” and “Fine Sound” on the 28th day of September, 1953, required only, inter alia, that for “one (1) year thereafter he will not make or perfect any inventions or be employed or work as an inventor for or with any person, firm, or corporation other than the corporation or its subsidiaries.” There is no contention that Fine has breached or is breaching the latter covenant.
There is no showing that any use is being made of any patent or any secret processes or techniques now owned or controlled by plaintiff-by-counterclaim, nor does the court perceive any implied covenant not to compete, (cf. Kaumagraph Co. v. Stampagraph Co., 235 N. Y. 1, 9; see, also, Lynch v. Bailey, 275 App. Div. 527, affd. 300 N. Y. 615; Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 406.) Accordingly, the request for an injunction pendente lite restraining the defendants-by-counterclaim “from engaging directly or indirectly, in any business in competition "with Fine Sound, Inc.” is denied.
"With respect to that branch of this motion which seeks to restrain the diversion of “customers”, in this proceeding it appears that only two accounts voluntarily followed Fine. The first, Mercury Records, had been rendered personal services by Fine since 1946. The second, Waldorf Records, was an account he had brought to the plaintiff-by-counterclaim as early as 1952. But since the defendants-by-counterclaim, having been under some fiduciary obligation (Meinhard v. Salmon, 249 N. Y. 458, *252 463; Carney v. Penn Realty Co., 174 App. Div. 86,; Supra Goss & Co. v. Goss, 147 App. Div. 698, 702), and in preservation of the status quo pending trial of the issues, this court will enjoin them from any affirmative conduct directed to the diversion unto themselves of customers and accounts of the plaintiff-by-counterclaim.
Finally, with relation to the alleged unlawful diversion of employees, it is not clear that there were more than two employees who actually left the employ of the plaintiff-by-counterclaim; and both had been veteran employees of Fine, and the services of neither were unique. So, although there does not appear to be any wholesale raiding of employees as in the case of Duane Jones Co. v. Burke (306 N. Y. 172), this court may and will, in view of the alleged threat of diversion of other employees, restrain the defendants-by-counterclaim from any affirmative conduct directed to the diversion of any other employees from the employ of the plaintiff-by-counterclaim unto the employ of the corporate defendant-by-counterclaim.
Settle order.