**FREDERICK CHUSID & COMPANY,**
Plaintiff,

v.

**MARSHALL LEEMAN & CO., Inc., Morton Feren, Christopher A. Thurman, Malcolm Beers, Charles L. Connor and Maurice Shykind, Defendants.**

**No. 67 Civ. 4148.**

United States District Court
S. D. New York.

Jan. 26, 1968.

Royall, Koegel, Rogers & Wells, New York City, for plaintiff; Norman Ostrow, Michael F. Cole, and James B. Weidner, New York City, of counsel.

Sol Nathan, New York City, for defendants.

MANSFIELD, District Judge.

Plaintiff, Frederick Chusid & Co. (hereinafter "Chusid"), a Delaware corporation engaged in the management consulting and personal counselling business with its principal place of business in Illinois, brings this diversity copyright and antitrust suit against five of its former employees and Marshall Leeman & Co. (hereinafter "Leeman"), a New York corporation having its principal place of business in this state, and seeks a preliminary injunction restraining all defendants from (1) copying and/or using plaintiff's copyrighted (either common law or statutory) forms, tests and brochures in any manner whatsoever, (2) using any confidential information learned in the employ of plaintiff, (3) enticing plaintiff's employees to leave their employment and join with Leeman, and (4) soliciting plaintiff's customers and clients. In addition, plaintiff seeks to enforce restrictive covenants contained in contracts with the defendants Feren and Beers which would prevent them from engaging in employment for an executive search or career counselling firm for a two-year period within, the Borough of Manhattan.

The following facts are undisputed. Chusid, a nationwide organization, uses various clinical diagnostic tools—such as Rorschach tests—to assist clients in adjusting to their current work environments or in finding more suitable positions. For promotion purposes, Chusid provides its prospective clientele with a copyrighted brochure entitled "You and Your Future in Business". Its employees are given a training program in which they are instructed in testing and psychological techniques. In connection with its testing procedures, Chusid uses a copyrighted personal data form, and a "blue book" which is designed to elicit the client's career views.

Leeman, incorporated on July 20, 1967, engages in the executive search and career counselling field and has utilized

brochures and forms that are either identical to or substantially similar to plaintiff's written matter (Haenlon Affidavit.) For instance, Leeman uses an exact duplicate of Chusid's personal data form, and Chusid's advertising brochure is plagiarized extensively by Leeman's brochure entitled "You and Your Future". Likewise, identical blue books were used.

The employment agreements between Chusid and the defendants Morton Feren and Malcolm Beers—the only defendants against whom Chusid seeks to enforce its restrictive covenants—provided:

"[F]or a period of two years following termination of your employment and within the geographical area specified below, you will not directly or indirectly, either individually or as a partner, stockholder, employee or [sic] any other capacity or relationship whatsoever engage in, obtain an interest in, or work for any Executive Search or Career Counselling firm, offering the same or similar services as the company offers. The geographic area to which Restrictive Covenant shall apply is: Borough of Manhattan, that being the actual area of operation of your activities within the company." (Paragraph 7)

In addition, these agreements provided:

"Upon the termination of your employment you will forthwith deliver to us * * * company manuals; company advertising; contracts; promotional literature; or any other printed or written material produced or used by the company in any stage of its work irrespective of whether or not you had any part in its writing or production; and you further agree that at no time after the termination will you sell, use, reveal, convey or furnish to any other person, firm, corporation or entity any of the foregoing informational materials." (Paragraph 6)

The agreements with the other defendants provided:

"For a period of two (2) years from the termination of your employment with the Company, [you will not] sell, use, reveal, convey or furnish to any individual, firm or company any of the trade secrets, selling procedures, client data and other information not known to or ascertainable by the general public. * * * "

On August 25, 1967, Feren, a New Jersey citizen employed by Chusid as an account executive, left plaintiff's New York office and began working for Leeman. On September 12, 1967, Christopher Thurman, a Massachusetts citizen, left Chusid to work for Leeman in Boston, and on September 20, 1967, Charles Connor, a Georgia citizen, terminated his employment in Atlanta to commence working with Leeman in that city. One day later, Beers, a New York citizen, also employed as an account executive, left Chusid's New York office to work for Leeman. According to Feren's and Beers' affidavits, prior to leaving Chusid's employ these four individuals had discussed going into business together, and had decided to stagger the termination of their employment so that Chusid's operation would not be disrupted. Maurice Shykind, a Maryland citizen, was discharged by Chusid on June 16, 1967, at which time he had been working in its Atlanta office, and commenced working for Leeman in its Washington office on September 18, 1967. Clark Slayman left plaintiff's employ on September 18, 1967 and joined Leeman in its Atlanta office on October 23, 1967. During the middle of August 1967, Feren invited Jack Kuscher, an account executive employed in Chusid's New York office, to lunch where the two engaged in discussions about the possibilities of Kuscher's working with Leeman. Similar discussions concededly took place between Harold Rather, an employee in Chusid's New York office, and Feren and Beers. In short, it appears that five of plaintiff's employees, led by Feren and Beers, left plaintiff's employ at approximately the same time pursuant to an understanding between at least some of them, to establish a competing business of the same type, using and plagiarizing materials

and forms taken from plaintiff, seeking to induce others to leave plaintiff's employ and join them, and causing some confusion by obtaining a telephone number for their newly established business that was almost identical to plaintiff's number.

## I. *Restrictive Covenants*

■ The restrictive covenants against Feren and Beers must be strictly construed and plaintiff is entitled to enforce them only if these employees' services are "unique or extraordinary," or relief is necessary to prevent solicitation of plaintiff's customers or disclosure of trade secrets, processes or formulae. Purchasing Associates, Inc. v. Weitz, 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E. 2d 245 (Ct.App.1963). In determining uniqueness of services, "more must * * be shown to establish such a quality than that the employee excels at his work or that his performance is of high value to his employer." Purchasing Associates, Inc. v. Weitz, supra.

■ Applying these principles here, Feren and Beers were account executives, i. e., salesmen. Although Frederick Chusid's affidavit asserts that it takes many months of training before an employee is permitted to advise clients, plaintiff, with 24 offices throughout the country, had a regular training program for such personnel and it is apparent that these individuals are replaceable. In addition, it does not appear that these defendants, prior to their association with plaintiff, possessed any extraordinary skills that might make their replacement difficult or impossible, and plaintiff neither alleges nor contends that it has had any difficulty in obtaining additional people to step into the shoes of these defendants. Since it must be concluded on the facts before the Court, even when viewed most favorably toward the plaintiff, that these defendants' services are neither unique nor extraordinary, see Carpenter & Hughes v. DeJoseph, 27 Misc.2d 1003, 213 N.Y.S.2d 856 (Sup.Ct.1960), affd., 10 N.Y.2d 925, 224 N.Y.S.2d 9, 179 N.E. 2d 854 (Ct.App.1961), the restrictive covenant, even if "reasonable", would be enforced only to the extent necessary to prevent their use of trade secrets or their solicitation of plaintiff's customers. Purchasing Associates, Inc. v. Weitz, supra; Carpenter & Hughes v. DeJoseph, supra.

■ Although Chusid's copyright and its agreements with its employees entitle it to enjoin their use of certain materials without regard to whether such materials are trade secret in nature (see infra, p. 917), the proof fails to demonstrate a basis for trade secret protection, since the materials were distributed by plaintiff to as many as 17,000 individuals. See Ferranti Electric, Inc. v. Harwood, 43 Misc.2d 533, 251 N.Y.S.2d 612 (Sup. Ct.1964); Minnesota Mining & Mfg. Co. v. Technical Tape Corp., 23 Misc.2d 671, 192 N.Y.S.2d 102 (Sup.Ct.1959), affd., 15 A.D.2d 960, 226 N.Y.S.2d 1021 (2d Dept.1962). Likewise there is insufficient proof of poaching of Chusid's customers to provide a basis for enforcement of the restrictive covenants (see infra, p. 919).

Accordingly, plaintiff's motion to enforce its restrictive covenant, *pendente lite,* must be denied.

## II. *Brochures, Tests, Advertising Matter, Procedures*

■ Defendants, contending that plaintiff is not entitled to injunctive relief restraining them from use of its brochures, tests, advertising matter and procedures, urge that (1) similar forms are used by other companies in this industry, and (2) complete and detailed information about these materials may be obtained from vast literature on the subject. See National Starch Products, Inc. v. Polymer Industries, Inc., 273 App. Div. 732, 79 N.Y.S.2d 357 (1948). However, this argument ignores the fact that defendants Feren and Beers have entered into contracts that expressly forbid their utilizing the pamphlets that are in issue. Under New York law the parties have the right by contract to prevent disclosure of such materials, even though they are not secret or confidential and may indeed be a matter of public knowledge.

Krisel v. Durand, 258 F.Supp. 845, 860 (S.D.N.Y.1966) (Weinfeld, J.); High v. Trade Union Courier Pub. Corp., 31 Misc. 2d 7, 69 N.Y.S.2d 526, 529 (Sup.Ct.1946), affd., 275 App.Div. 803, 89 N.Y.S.2d 527 (1st Dept.1949); see Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254, 262 (E.D. La.1967).

■ As to the remaining three individual defendants, their contracts preclude them from utilizing "trade secrets, selling procedures, client data and other information not known to or ascertainable by the general public," for a two-year period after the termination of their employment. Since the "blue books," pamphlets, brochures, and other tests were given to Chusid's clients upon payment of substantial fees and on condition that they be returned at a later time, they fall within the category of "information not known to or ascertainable by the general public". The lack of general interest in such a highly specialized brochure, the fact that in order to receive the desired services clients must return the materials to Chusid and that no right of republication had ever been granted, when coupled with the financial barrier to access, sufficiently isolates the material from the public to negate a forfeiture or intent to dedicate it to the general public as common property. Burnett v. Lambino, 204 F.Supp. 327 (S.D.N.Y.1962); Hirshon v. United Artists Corp., 100 U.S.App.D.C. 217, 243 F.2d 640 (1957).

■ Chusid's copyright interest in its printed material on file with the Copyright Office, including its personal data forms and the brochure "Twelve Steps to Successful Executive Marketing", entitle it to injunctive relief with respect to such material. There has been no evidence to indicate that plaintiff did not create these forms. The only issue raised is whether the 1961 notice date on the brochure that was published and registered in 1963 (Ostrow Supplemental Affidavit) nullifies plaintiff's copyright. Since the misdating of the copyright notice was in favor of the public, the error does not result in an abandonment into the public domain. Leigh v. Gerber, 86 F.Supp. 320 (S.D.N.Y.1949).

■ However, Chusid is not entitled to enjoin defendants from using the intangible procedures and techniques that defendants have learned while they were employed by Chusid. The interests of the public and the employees in the latter's being permitted to pursue their trade entitle such employees to carry with them their "faculties, skills and experience" that they have learned in their former position. Clark Paper & Mfg. Co. v. Stenacher, 236 N.Y. 312, 140 N.E. 708, 29 A.L.R. 1325 (Ct.App.1923); Richard M. Krause, Inc. v. Gardner, 99 N.Y.S.2d 592 (Sup.Ct.1950). Plaintiff has not endeavored to particularize the selling or counselling procedures alleged to have been unknown to the rest of the industry and imparted to the defendants. Trade secret relief is therefore unwarranted. Tempo Instrument, Inc. v. Logitek, Inc., 229 F.Supp. 1 (E.D.N.Y.1964).

### III. *Solicitation of Chusid's Employees*

■ The individual defendants who had been employed by Chusid owed a common law duty of loyalty to their employer, and this duty continued after the termination of the relationship. Duane Jones, Co. v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954). Soliciting employees to leave their employer constitutes a breach of this good-faith duty. Duane Jones, Co. v. Burke, supra; see Universal Elec. Corp. v. Golden Shield Corp., 316 F.2d 568 (1st Cir. 1963) (applying New York law).* Under New

---

* For purposes of this decision, it is assumed that the prospective interference with contractual relations that Chusid has with its employees will occur in those states, i. e., Georgia and Massachusetts, and in the District of Columbia wherein the individual defendants are located. Since this Court must apply New York's "grouping of contacts" conflicts of laws doctrine, and under the aforementioned assumption, the tortious conduct would be most likely to take place in the state

York law, injunctive relief can be obtained even though the services of the employees so solicited were not unique. See Fine v. Loew, 7 Misc.2d 245, 159 N.Y.S.2d 318 (Sup.Ct.1957); American League Baseball Club v. Pasquel, 187 Misc. 230, 63 N.Y.S.2d 537 (Sup.Ct. 1946). The fact that within three months after Leeman had been incorporated five Chusid employees transferred their allegiance to Leeman and at least two other Chusid employees discussed the possibility of working for Leeman points strongly in the direction of finding that defendants were actively soliciting Chusid's employees. Unless temporary relief is granted, plaintiff may lose such a large part of its staff that it might be unable to continue as a viable business organization, whereas an injunction restraining defendants from soliciting or enticing Chusid's employees to leave their employer will not preclude defendants from acting in a manner consistent with their fiduciary duties to Chusid. The balance of equities and hardships warrants the issuance of such relief. As was said in Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204–205 (2d Cir. 1966) (Lumbard, C. J.):

" 'it will ordinarily be enough that the plaintiff [defendant here] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation,' where, as here, 'the balance of hardships' tips decidedly toward the party requesting the temporary relief. Hamilton Watch Co. v. Benrus Watch Co., supra, [2 Cir.,] 206 F.2d [738,] at 470. The likelihood of success is 'merely one strong factor to be weighed along the comparative injuries of the parties.' 3 Barron & Holtzoff, Federal Practice & Procedure § 1433, at 493 (1958)."

At this juncture, the Court need not decide whether, in addition to stating a claim under state law, defendants' solicitation of Chusid's employees constitutes a violation of § 1 of the Sherman Act. See Perryton Wholesale, Inc. v. Pioneer Distributing Co., 353 F.2d 618 (10th Cir. 1965).

## IV. Customers' Lists

Since the only solicitation of former customers involved Thurman's allegedly having offered one customer the position of president of Leeman, there is little to indicate that defendants seek to use plaintiff's customers' lists and customers' leads in order to compete with Chusid. Under the circumstances, it would be premature to enjoin defendants from soliciting customers and clients in order to induce them to discontinue their business relationships with plaintiff.

Accordingly, and in order to avoid irreparable injury to plaintiff, a preliminary injunction will issue pursuant to Rule 65, F.R.Civ.P., enjoining defendants Marshall Leeman & Co., Morton Feren, Christopher A. Thurman, Malcolm Beers, Charles L. Connor and Maurice Shykind: (1) from copying or using in any other manner plaintiff's forms, brochures and pamphlets that defendants acquired while in the employ of Chusid, and (2) from soliciting or enticing plaintiff's employees to leave their employment.

The foregoing will constitute the Court's findings of fact and conclusions of law under Rule 52(a), F.R.Civ.P.

Settle order.

in which the contracts were entered into and were to be performed, these states and the District of Columbia provide the applicable law. The principles of Lumley v. Gye, 21 El. & Bl. 216, 118 Eng. Reg. 749 (1853), announcing that intentional interference with contracts for personal services constitutes a tort has been accepted by these states and the District of Columbia. Studdard v. Evans, 108 Ga. App. 819, 135 S.E.2d 60 (1964); Owen v. Williams, 322 Mass. 356, 77 N.E.2d 318, 9 A.L.R.2d 223 (1948); Meyer v. Washington Times Co., 64 App.D.C. 218, 76 F.2d 988 (1935). Therefore, the conclusions reached as to the defendants Feren and Beers, formerly employed by Chusid in its New York office, apply equally to the other individual defendants and to Leeman.