**NATURE HOUSE, INC., an Illinois Corporation, Plaintiff,**

v.

**Richard SLOAN, Defendant.**

**No. 80 C 6715.**

United States District Court, N. D. Illinois, E. D.

May 5, 1981.

Silverman, Cass, Singer, Chicago, Ill., for plaintiff.

Malcolm S. Kamin, Arvy, Hodes, Costello & Burman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, Nature House, Inc. ("Nature House"), an Illinois corporation, filed this action for injunctive and monetary relief against defendant, Richard Sloan ("Sloan"), an Arizona resident, seeking to enforce two restrictive covenants that purport to bar Sloan (1) from painting or drawing any species of bird if such bird previously had been the subject of a painting Sloan did for Nature House or its predecessor, Trio Manufacturing Co. ("Trio"), and (2) from producing directly or indirectly prints or reproductions of such paintings without the consent of Nature House or Trio. Plaintiff also seeks to recover monies allegedly due and owing on a loan it supposedly made to Sloan and to recover excess royalties allegedly received by Sloan under his contract with Nature House. Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332 and the amount in controversy is alleged to be in excess of $10,000 exclusive of interest and costs.

This matter is presently before the Court on Sloan's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Sloan contends that the restrictive covenants are void as a matter of Illinois law, that his contract with Nature House expressly provided that he did not have to return excess royalty payments, and that the complaint is fatally defective with regard to the alleged loan. As the parties rely on matters outside the pleadings in connection with the motion as directed to the restrictive covenants, the Court will treat it as a motion for summary judgment under Fed.R.Civ.P. 56 to this extent. *Grafon Corp. v. Hausermann*, 458 F.Supp. 91, 92 (N.D.Ill.1978).

The facts in this case are relatively uncomplicated. In November, 1967, Sloan, reputedly one of North America's finest painters of bird and other wildlife subjects, entered into an employment agreement in Illinois with Nature House, then doing business as Trio Manufacturing Company, pursuant to which Sloan agreed to paint a series of 50 bird subjects which Trio-Nature House would then market to wildlife art afficionados individually or as a complete set. Included within the series of 50 paintings were to be 28 birds representing the state birds of all 50 states. The prices of the prints range from $50 to $400 and the complete set of 50 is available for $5,125. Under the terms of the employment agreement, Sloan was to be paid an annual salary of $9,600 plus a 5% royalty on the net selling price of the paintings. The agreement was renewable at the option of Trio-Nature House for periods of one year for up to a total of five years.

In July, 1969, the parties executed a "Supplement To Employment Agreement" wherein they agreed to extend Trio's option to renew for two more years or for a total of seven years. The supplemental agreement also contained a restrictive covenant providing as follows:

14. SLOAN agrees that after termination of this contract for any reason, he shall be free to paint or render in any medium any drawing of a bird or animal subject from a species of bird or animal which has been painted or rendered for TRIO under said EMPLOYMENT AGREEMENT provided that neither SLOAN nor any assignee nor other person deriving an interest in said drawing shall have the right to produce prints or reproductions thereof except with the written consent of TRIO or its successors or assigns first obtained. However, it is agreed that SLOAN can paint or render

any drawing of a bird or animal subject from a species of bird or animal subject which he has not painted or rendered for TRIO under said EMPLOYMENT AGREEMENT after termination of the Agreement for any reason. For the purpose of interpretation of the foregoing provisions where SLOAN has painted or rendered a drawing of a purple martin bird subject for TRIO, SLOAN agrees not to paint or render another drawing using a purple martin bird except where suitable precautions and care is taken to prevent reproductions or prints of said drawing from being made. Further, SLOAN can paint or render a drawing using a woodpecker bird subject without qualification under the provisions of this paragraph where he has not painted or rendered a drawing using a woodpecker bird subject for TRIO.

The parties modified the agreement once again in June, 1971, effective in November, 1972, by providing that it would extend through November 14, 1980. This "Modification of Employment Agreement" also provided that Sloan's annual salary would be increased from $9,600 per year to $24,000 per year commencing in November, 1974, and that he would be entitled to a minimum guaranteed royalty of $600 per month:

> payable upon SLOAN's signing all of the collector's prints of a particular bird subject as presented to him by TRIO. Said minimum guaranteed royalty shall be treated as an advance payment of royalty which may become due and payable by TRIO ... and TRIO agrees that SLOAN shall not be required to refund to TRIO any monies advanced to SLOAN as said guaranteed royalty.

The modification also contained a restrictive covenant as follows:

> 3.0 During the term of this EMPLOYMENT AGREEMENT and at any time after termination thereof, SLOAN agrees not to paint any drawing of a bird subject that already has been rendered by him for TRIO [now Nature House] and for which he has been compensated under the terms of this Agreement. SLOAN agrees that he will not render a drawing of such a previously rendered bird subject regardless of the medium or artistic technique used.

Sloan has fulfilled his obligations under the contract with Trio-Nature House and he has been compensated in accordance with the terms of the agreement.[1] The contract having expired in November, 1980, pursuant to the modification executed in 1971, Sloan is no longer employed by Nature House. Since 1976, however, Sloan has admittedly painted or reproduced many of the same birds that he originally painted for Trio-Nature House and has sold these reproductions or paintings himself or through dealers located in Tennessee and Illinois. Such paintings, reproductions, and sales would appear to violate the restrictive covenants contained in paragraph 14 of the supplemental agreement executed in July 1969, and paragraph 3.0 of the modification executed in June, 1971. Sloan contends, however, that these restrictive covenants are void and unenforceable as a matter of law and public policy.

## I.

### THE RESTRICTIVE COVENANTS

In order to determine whether a restrictive covenant is enforceable under Illi-

1. As a preliminary matter, Nature House attempts to characterize its relationship with Sloan as a joint venture rather than as an employment situation with Sloan as the employee in an apparent attempt to avoid the close scrutiny given restrictive covenants in employment agreements. The main contract (entitled "Employment Agreement") between Sloan and Nature House and the several modifications speak for themselves in terms of the relationship contemplated by the parties. The relationship has none of the fundamental characteristics of a joint venture, in terms of sharing of profits and equality of control, and all of the indicia of an employment relationship with Nature House as the employer and Sloan as employee. The fact that Sloan was to receive a royalty based upon the net sales of his prints does not alter the underlying nature of the relationship between he and Nature House. Sloan had regular payroll deductions subtracted from his paycheck and was subject to a fair amount of control by Nature House, though he did have the artistic discretion to paint the specified subjects in his own style.

nois law, a court must consider "whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee." *J. D. Marshall International, Inc. v. Fradkin*, 87 Ill.App.3d 118, 42 Ill.Dec. 509, 512, 409 N.E.2d 4, 7 (1st Dist. 1980); *House of Visions, Inc. v. Hiyane*, 37 Ill.2d 32, 225 N.E.2d 21, 24 (1967). Restrictive covenants have been enforced in Illinois only if the time limit and geographical scope are reasonable; trade secrets or other confidential information is involved; and the restriction is reasonably necessary for the protection of a legitimate business interest. *Central Building and Cleaning Company v. Vodnansky*, 84 Ill.App.3d 586, 40 Ill.Dec. 331, 333, 406 N.E.2d 32, 34 (1st Dist. 1980); *Image Supplies, Inc. v. Hilmert*, 71 Ill.App.3d 710, 28 Ill.Dec. 86, 88, 390 N.E.2d 68, 70 (1969).[2]

In the case at bar, the restrictive covenants are unlimited as to both time and geographical scope; they do not seek to protect trade secrets or confidential information;[3] and they are much broader than necessary to protect the legitimate business interests of Nature House in the value of its series of Sloan bird paintings. Under the terms of the covenants, Sloan is forever forbidden to paint any of the birds that he painted for Trio-Nature House anywhere in the world and whether or not in competition with the plaintiff. He is also permanently foreclosed from producing any prints or reproductions of his paintings, whether or not in competition with Nature House, without the company's consent. Such broad restrictions, absent any time or geographi-

cal limitations, are clearly contrary to the public policy of the State of Illinois and void as a matter of law.[4] The restrictions also do not further the legitimate business interest of Nature House in maintaining the value of its limited edition prints of Sloan's birds. The company has failed to show how subsequent and different paintings of the same bird species that Sloan did for Nature House could harm the integrity of the Nature House series of paintings whose value is determined, in large part, by the number and quality of reproductions from the same original painting or plate. Rather than promoting the interest of the public in the value of its 50-bird limited edition series as Nature House suggests, the restrictive covenants in the instant case would do the public a disservice by preventing Richard Sloan from plying his trade with the significant talent that Nature House concedes he possesses.

In an attempt to save the restrictive covenants here at issue, Nature House suggests that the Court may write into them such limitations as we deem to be reasonable. However, courts have consistently refused to carve reasonable limitations out of clearly unreasonable restrictive covenants, particularly when the restrictions arise out of a former employment relationship. *Central Specialties Company v. Schaefer*, 318 F.Supp. 855, 859 (N.D.Ill.1970); *House of Vision, Inc. v. Hiyane*, 37 Ill.2d 32, 225 N.E.2d 21, 25 (1967).

Accordingly, Sloan is entitled to summary judgment dismissing the complaint as to the restrictive covenants.

2. Other jurisdictions have upheld restrictive covenants that are otherwise limited as to time and geographical scope when the promisor is a former employee of the promisee with some unique knowledge, skill, ability, or talent. *Houston Oilers, Inc. v. Neely*, 361 F.2d 36 (10th Cir. 1966) (Texas law); *Diaz v. Indiana Head, Inc.*, 402 F.Supp. 111 (N.D.Ill.), *affirmed*, 525 F.2d 694 (7th Cir. 1975) (New York law); *Frederick Chusid & Co. v. Marshall Leeman & Co.*, 279 F.Supp. 913 (S.D.N.Y.1968).

3. Even if this Court were to hold that Illinois law would also uphold the restrictive covenant of an employee with exceptional skill or talent such as Sloan, *see* cases cited in footnote 2,

*supra*, the unrestricted nature of the covenants involved in the instant case would still be fatal to their ultimate enforceability.

4. In light of our holding with regard to the unenforceability of the restrictive covenants, the Court need not address Sloan's contention that the bar on any reproductions of his paintings without the consent of Nature House is void as an attempt to create a common law copyright in contravention of the federal Copyright Act of 1976, 17 U.S.C. at § 301, which preempts all state statutory and common law in the field.

## II.

### THE ALLEGED LOAN AND EXCESS ROYALTIES

In its complaint, Nature House also alleges that although Sloan received a total of $287,258.38 during the course of his relationship with Nature House from November, 1967, through November, 1980, he was only entitled to approximately $145,000 under the terms of the employment agreement and subsequent modifications. Thus, Nature House seeks to recover in excess of $142,000, said to include an unpaid "loan" of unspecified amount and excess royalties of unknown size supposedly overpaid to Sloan between 1967 and 1980.

The complaint is woefully deficient in its attempt to state a claim for relief either for an outstanding debt or excess royalties. Nature House has failed to state the amount of the supposed loan, Sloan's supposed promise to repay, the date the loan became due and owing, or the existence of any evidence of the indebtedness. In the absence of such basic information, the complaint fails to state a claim upon which relief may be granted even under the liberal pleading rules applicable in this Court.

Moreover, to the extent that Nature House seeks to recover excess royalties allegedly paid to Sloan during the course of their relationship, the very terms of their employment agreement precludes such a result. As quoted earlier in this opinion, paragraph 2.2 of the modification to the employment agreement executed in June, 1971, provides for the payment of a guaranteed royalty to Sloan and states that "... TRIO agrees that SLOAN shall not be required to refund to TRIO any monies advanced to SLOAN as said-guaranteed royalty." The complaint does not set forth the amount of excess royalties allegedly due to Nature House, the period of time during such royalties were supposedly paid to Sloan, or any basis for disregarding the express statement of the parties in the 1971 modification. Thus, the claim for excess royalties also fails to state a claim upon which relief can be granted.

Accordingly, Sloan's motion for summary judgment with respect to the restrictive covenants is granted upon this Court's holding that the covenants are unenforceable as a matter of law. Sloan's motion to dismiss those portions of the complaint seeking recovery of excess royalties and monies due on an alleged loan is also granted. It is so ordered.