## (July 30, 1984)

■ ADVANCE BIOFACTURES CORPORATION, Appellant, v JACOB GREENBERG, Respondent. — In an action, *inter alia*, for a permanent injunction and money damages based on disclosure of trade secrets, interference with contractual relations, disparagement of product and breach of contract, plaintiff appeals from an order of the Supreme Court, Queens County (Kassoff, J.), dated February 28, 1984, which denied its motion for a preliminary injunction. ¶ Order affirmed, without costs or disbursements. ¶ Plaintiff is a New York corporation engaged in the purification of various enzymes, which are produced by microorganisms, into drugs for medicinal applications. The development of enzymes into drugs is allegedly a costly and time-consuming process.

Plaintiff developed a drug known as Collagenase ABC which is used to treat dermal ulcers and necrotic burns, and this drug was approved by the Food and Drug Administration (FDA) in 1965, after an investment of approximately $4,000,000 in product research and development. Plaintiff is currently attempting to obtain FDA approval for a refined preparation of Collagenase ABC, known as Nucleolysin, which, it is hoped, will be used for the treatment of herniated intervertebral discs. To date, over $6,500,000 has allegedly been invested in the development and testing of Nucleolysin, and phase three testing of the drug has been completed. It is acknowledged that another drug, Chymopapain, has been developed by another company and may also be used for the treatment of disc herniations. According to one article, Travelol Laboratories tested one preparation of Chymopapain (Discase) and Smith Labs has tested another preparation of Chymopapain (Chymodiactin). There has been extensive discussion in scientific journals of, among other aspects of this field, the methods of preparing purified Collagenase. The defendant is a biochemist. The undisputed contents of his *curriculum vitae* indicate that he has done research for over 20 years at various universities and medical schools. He has published numerous articles in various professional journals, many of which relate to Collagenase, Papain, and other enzymes. He began to work for plaintiff in 1971, worked as a part-time consultant from 1972 until July, 1975, and thereafter worked full time until his employment was terminated on May 13, 1983. ¶ In a contract dated July 23, 1982, defendant agreed to refrain from divulging any confidential knowledge or information that he might learn in his employment, and, upon payment of $100 consideration, to assign to plaintiff his rights to any invention he might conceive during his employment. ¶ Some four and a half months after the termination of his employment, defendant wrote a letter to Knoll Pharmaceutical Company, the United States based affiliate of a West German pharmaceutical concern, in which he claimed to be the developer of Nucleolysin, and offered a new product to replace Nucleolysin, which he stated had serious problems. He also sent a complaint to the FDA in which he specified his misgivings about the quality of Nucleolysin. ¶ Plaintiff alleges that this new product must be merely an improved form of Nucleolysin, and that if it is indeed, different, it must have been conceived and developed by defendant while employed by plaintiff. Defendant argues that his idea for a new product, as set forth in his patent disclosure document is a different drug, based on a different enzyme. He states that his concept is based on his extensive knowledge and experience acquired during more than 20 years of work in the field, and denies making use of any trade secrets. ¶ In this action, plaintiff seeks a permanent injunction against the defendant, and premises its right to such relief on, *inter alia,* infringement of trade secret, breach of the nondisclosure provisions of the employment contract, intentional interference with contractual relations, and disparagement of product. Arguing that it would suffer irreparable harm without provisional relief, plaintiff moved for a preliminary injunction. Special Term denied the motion, finding that numerous questions of fact render plaintiff's likelihood of ultimate success on the merits questionable. ¶ Plaintiff argues that its "secret processes, formulae, data, knowledge, and information and the cultures, spores of cultures and microorganisms" relating to the process of purifying Collagenase ABC into Nucleolysin constitute trade secrets. Relying on both this trade secret theory and the contractual prohibition against disclosing confidential knowledge and information, plaintiff seeks to preliminarily enjoin defendant from, *inter alia,* "disclosing * * * to any other person, firm or entity plaintiff's secret processes * * * or promoting or selling products made with, from or as a result thereof" and from "using any * * * knowledge * * * whether developed by plaintiff or developed by defendant during his

employment with plaintiff". ¶ A former employee may be restrained from revealing a trade secret learned during his employment to his former employer's competitor, even in the absence of an agreement not to compete (*Byrne v Barrett*, 268 NY 199; *Riteoff, Inc. v Contact Ind.*, 43 AD2d 731). It is clear that such a trade secret may consist not only of a specific formula (see, e.g., *Tabor v Hoffman*, 118 NY 30) but also of a manufacturing process (see, generally, *Minnesota Min. & Mfg. Co. v Technical Tape Corp.*, 23 Misc 2d 671, affd 15 AD2d 960). However, an employee may not be restrained from using the general techniques learned during his employment (*Cataphote Corp. v Hudson*, 444 F2d 1313, 1316-1317; *Pressure Science v Kramer*, 413 F Supp 618, affd 551 F2d 301; *Chusid & Co. v Leeman & Co.*, 279 F Supp 913). " 'The employer's interest in the trade secret must be crystal clear to justify the restraint of the employee, for whom it may have become part of his general knowledge and experience' " (2 Callmann, Unfair Competition, Trademarks & Monopolies, § 53.2, subd [a], p 384, quoted in *Dynamics Research Corp. v Analytic Sciences Corp.*, 400 NE2d 1274, 1283 [Mass App]; see, also, *Microbiological Research Corp. v Muna*, 625 P2d 690 [Utah]). ¶ Plaintiff has failed to show what aspect of the process of developing Collagenase ABC into Nucleolysin qualifies as a secret in an industry where similar refinement of enzymes into drugs is done by other companies, and the literature describing such efforts appears to be extensive. Plaintiff may not obtain an injunction requiring the defendant to refrain from using his knowledge of purportedly secret processes where the effect of such an order would be to restrain defendant from using his own knowledge and experience to his advantage. Without expressing an opinion on the possibility of plaintiff's ultimate success on the merits, we conclude merely that threat of the disclosure of a specific trade secret or item of confidential information has not been sufficiently demonstrated by plaintiff so as to warrant the drastic remedy of a preliminary injunction. Plaintiff has likewise failed to demonstrate a likelihood of success either on a theory of disparagement of product, since no special damages have been alleged (*Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663, 670-671), or on a theory of intentional interference with contract, since no breach of plaintiff's agreement with Knoll A.G. has been alleged (*Gregoris Motors v Nissan Motor Corp.*, 80 AD2d 631, affd 54 NY2d 634). Weinstein, J. P., Niehoff, Rubin and Eiber, JJ., concur.