*172 OPINION OF THE COURT
Kenneth R. Fisher, J.
Defendants move for summary judgment dismissing the complaint which alleges (1) improper use of trade secrets and breach of alleged fiduciary duty, (2) copyright infringement, and (3) a claim in prima facie tort. The copyright infringement claim was dismissed by order dated January 5, 2006.
Sales Strategies Group, Inc. (SSG) was incorporated in the state of Idaho on January 5, 2005, and retained defendants Fen-ton and Bailey as independent contractors for the purpose of performing “front-end” speaking engagements at free half-day seminars held exclusively for realtors. They did not have an employment agreement or other noncompete or nondisclosure agreements, nor did they become subject to a restrictive covenant of any kind. The object of the free half-day seminars was to encourage those in attendance to attend a $425 all-day workshop. According to Fenton and Bailey in their affidavits, they came to realize that what they were promising at the front-end half-day speaking engagements was not being provided by SSG at the all-day workshops. The Rochester Business Journal published an article identifying complaints against SSG’s predecessor, JD Real Estate Group, Inc., which was in an identical business and owned and operated by the same individual, Joseph DiLeo. When Fenton and Bailey resigned from SSG in March and June 2005, respectively, and opened up a similar business and company, codefendant Money Tree Training Group, which targeted the mortgage lending industry, not realtors, plaintiff sued.
In support of their summary judgment motion, defendants establish that they did not physically take anything from the plaintiff, that DiLeo admitted in his deposition that he has no knowledge that defendants physically took anything when they departed SSG (“I don’t know that he’s got hard copy, but it certainly obviously is in his head”), that the alleged trade secret in question, to the extent it can be seen to include a business formula for attracting and selling to customers, is given away at no charge to anyone who attends the free half-day presentations together with the scripts for the free presentations and the scripts used to solicit sponsors, that the presentations themselves are not secret because anyone who attends them hears both the words spoken and the manner in which the words are delivered, and that the alleged trade secrets have no value.
Accordingly, in the circumstances, what plaintiff claims is a trade secret is not a formula, pattern, device or compilation *173 “which is used in one’s business, and which gives [plaintiff] an opportunity to obtain an advantage over competitors who do not know or use it.” (Eagle Comtronics v Pico, Inc., 89 AD2d 803, 803 [4th Dept 1982], quoting Restatement of Torts § 757, Comment b.) Given the formula of Ashland Mgt. v Janien (82 NY2d 395, 407 [1993]), by any measure what plaintiff claims is a trade secret in this case quite plainly is not. Plaintiffs chief executive officer, DiLeo, conceded in his deposition that the business model in question is used by others, and could only claim that plaintiff used it with more skill and to a greater degree than any other business. Furthermore, plaintiff took no steps to protect the secrecy of its business formula or model because it presented it repeatedly during the free half-day seminars, thereby establishing that no trade secret protection exists for information which easily can be acquired by others and duplicated. (JAD Corp. of Am. v Lewis, 305 AD2d 545 [2d Dept 2003]; Eagle Comtronics, 89 AD2d at 804; see also, Nadel v Play-By-Play Toys & Novelties, Inc., 208 F3d 368, 380 [2d Cir 2000] [“the law does not protect against the use of that which is free and available to all”].)
Defendants also establish that the so-called business model allegedly protected was not physically expropriated from plaintiff if it exists in physical form at all (Falco v Parry, 6 AD3d 1138 [4th Dept 2004]), and that, in DiLeo’s own words, it only exists in the individual defendants’ “head.” (Accent Stripe v Taylor, 204 AD2d 1054 [4th Dept 1994] [mere knowledge of business intricacies acquired while working for former employer not protected as trade secret or confidential information].) Furthermore, “The scripts are sales pitches, and once they have been used, sales pitches are not treated as trade secrets.” (In re Providian Credit Card Cases, 96 Cal App 4th 292, 305, 116 Cal Rptr 2d 833, 843 [1st Dist 2002].) To the same effect is American Exp. Travel Related Servs. Co., Inc. v Accu-Weather, Inc. (849 F Supp 233, 242 [SD NY 1994)], affd 105 F3d 863 [2d Cir 1997]).
DiLeo admitted in his deposition that the half-day presentations, and their script, were based on published material by such authors as Napoleon Hill, Brian Tracy, Pete Ziegler, and Tony Robbins, and that by reason thereof there could not, in these circumstances, be any theft of an idea that was novel or original. (Ring v Estee Lauder, Inc., 702 F Supp 76, 77 [SD NY 1988].) Plaintiff’s contention that what it seeks to protect in this action is a trade secret was persuasively laid to rest in Mi *174 croStrategy Inc. v Business Objects, S.A. (331 F Supp 2d 396, 423 [ED Va 2004] [“method of selling was readily ascertainable by any interested party . . . selling method employed . . . was made public each time it was utilized . . . (no restriction on attendees or) prospect(s) (that they were) unable to discuss the type of sales pitch employed”]). That case acknowledged that “[s]ales techniques can constitute trade secrets even if such techniques are generally known, providing the combination of such techniques is sufficiently novel and secret” (331 F Supp 2d at 422), but defendants establish as a matter of law on this motion that the techniques in question in this case were not novel* nor were they secret. Plaintiff “cannot take common sense from the public domain of ideas and preserve it as a trade secret for its exclusive use.” (Mo-Kan Cent. Recovery Co. v Hedenkamp, 671 SW2d 396, 400 [Mo Ct App WD 1984].) Nor can plaintiff prevent defendants from “carry[ing] with them their ‘faculties, skills and experience’ that they learned in their former position.” (Frederick Chusid & Co. v Marshall Leeman & Co., 279 F Supp 913, 918 [SD NY 1968], quoting Clark Paper & Mfg. Co. v Stenacher, 236 NY 312 [1923].) In other words, plaintiff could not enjoin defendants from using “intangible procedures and techniques that defendants learned while employed by plaintiff.” (Frederick Chusid & Co. v Marshall Leeman & Co., 279 F Supp at 918.)
In opposition to this showing, plaintiff fails to raise an issue of fact. Much of DiLeo’s affidavit contradicted his deposition testimony, especially his invocation of a concept of “hidden details” or “know-how,” an aspect not mentioned in his deposition testimony. (Martin v Savage, 299 AD2d 903, 904 [4th Dept 2002].) Given the questions posed to DiLeo at his deposition, he would have been expected to reveal much of what he now claims in his affidavit in his deposition answers. (See Schuster v Dukarm, 38 AD3d 1358, 1360 [4th Dept 2007, Hurlbutt, J.P., and Smith, J., dissenting] [statements on motion “merely an attempt to avoid the implications of her prior testimony by raising a feigned issue”]; Richter v Collier, 5 AD3d 1003, 1004 [4th Dept 2004] [same].) In any event, what details might have been hidden were assuredly revealed once the presentations were *175 made. The work books were routinely given away at the presentations, and there is no allegation that defendants removed anything plaintiff alleges was kept under lock and key. It must be remembered that there was no attempt to prevent dissemination by those attending the presentations via confidentiality agreement or otherwise, either of the written materials or of the oral presentation or the manner of its delivery. That no recordings were permitted does not raise an issue of fact on the secrecy issue. Similarly, that training was involved and that the presenters had to memorize the script only underscores that defendants only took with them what plaintiff concedes was “in their head.”
The third cause of action in prima facie tort is dismissed on defendants’ showing that they had other valid motives for their conduct than the disinterested malice that must be the sole motivation to sustain that claim, and the failure of plaintiff to raise an issue of fact that the prohibited motive was the only motive. (Great Am. Trucking Co. v Swiech, 267 AD2d 1068 [4th Dept 1999].)

 The use of the term novel in this context should be distinguished from its use in the patent law sense. (McAlpine v AAMCO Automatic Transmissions, Inc., 461 F Supp 1232, 1256 [ED Mich 1978] [“Secrecy, in the context of trade secrets, implies at least minimal novelty”], citing Kewanee Oil Co. v Bicron Corp., 416 US 470, 476 [1974].)