Froessel, J.
Plaintiff is a dealer-distributor. Defendant Hyster Company (hereinafter called Hyster) is a manufacturer of industrial and other trucks, cranes and parts. Defendant Chester was plaintiff’s salesman. Defendant Shaffer was *374 Hyster’s district manager. Plaintiff and its predecessors were distributors of Hyster’s products in parts of New York and New Jersey, and had enjoyed a dealer-manufacturer relationship for 15 years under written contracts permitting either party to terminate at any time. This action is brought for damages arising from allegedly wrongful acts committed by defendants leading up to and resulting in the termination of the agreement and relationship between plaintiff and Hystep.
Six causes of action are pleaded in the second amended complaint. The first, fifth and sixth causes are against Hyster, the second against Chester, the third against Shaffer, and the fourth for conspiracy against all defendants. The defendants have challenged the legal sufficiency of each cause of action. Special Term has sustained all except the conspiracy action, and as to one ground of recovery in the third cause of action. The Appellate Division, by its order, agreed with Special Term as to the first three causes of action, sustained the fourth cause of action and dismissed the fifth and sixth causes of action. Prom the judgment entered on the dismissal of the fifth and sixth causes of action, plaintiff appeals as of right. Prom the remainder of the Appellate Division order, the defendants were granted leave to appeal by that court, which certified to us four questions, namely, whether each of the first, second and fourth causes of action and the first and second grounds of recovery in the third cause of action are legally sufficient.
Reading the allegations of the complaint and each of its separate causes of action liberally, with a view to substantial justice between the parties, and mindful that “ our inquiry is as to whether ’ ’ each cause of action is stated ‘ ‘ in some recognizable form * * * known to our law” (Civ. Prac. Act, § 275; Shipman v. Bennett, 2 N Y 2d 966; Morgenstern v. Cohon, 2 N Y 2d 302; Dulberg v. Mock, 1 N Y 2d 54, 56; Curren v. O’Connor, 304 N. Y. 515; Condon v. Associated Hosp. Service, 287 N. Y. 411, 414), we agree with the Appellate Division as to the first four causes of action, but hold that the fifth and sixth causes of action are also legally sufficient.
1. The first cause of action alleges that from 1937 through 1952 plaintiff, by investment of substantial amounts of money, time and effort, had developed a sales organization and market for Hyster’s products so that plaintiff was realizing a gross annual income of $800,000, until first interfered with by Hyster *375 as hereinafter stated. Between December, 1949 and October, 1951, plaintiff hired and trained as salesmen, under written contracts of employment, defendant George Chester, Paul Shoriak and G. Richard O’Neill, and orally hired and trained Alexander Koziara as a “ parts man * * * in servicing and maintaining ” Hyster’s trucks, all of which employment agreements were known to Hyster.
Despite this knowledge, Hyster maliciously (1) induced Chester to 11 violate, repudiate and breach ’ ’ his agreement with plaintiff; (2) fomented discontent and dissension between plaintiff and the other employees above named, and (3) induced, enticed and procured these three other employees to terminate their contracts with plaintiff and to enter the employ of the Hyster Company. As a result of Hyster’s acts, it was able to place itself in the position where, on August 12, 1952, it could terminate plaintiff’s distributorship and appropriate to itself the good will, income and business success which plaintiff had built up over the past 15 years, without a break in salesman representation. It is conclusorily alleged that Hyster induced the breach of Chester’s contract; otherwise there is no suggestion that the contracts of employment were for a definite term; hence they must be deemed terminable at will (Watson v. Gugino, 204 N. Y. 535, 541; Martin v. New York Life Ins. Co., 148 N. Y. 117, 121).
The principal issue involved in the sufficiency of the first cause of action is ¡whether Hyster’s inducement of plaintiff’s employees to terminate their agreements with plaintiff was tortious^ Hyster urges that since the contracts of employment were terminable at will, and it did not engage in any independently tortious conduct in such inducement, its conduct is not actionable as interference with contractual relations, and, inasmuch as it was motivated by a desire for its own pecuniary gain, it was not solely motivated by malice in its actions, and therefore its conduct is not prima facie tortious.
Plaintiff concedes that ordinarily one business man may offer the employee of another an opportunity to change his employment, but maintains that in this particular case there is such a relation of confidence between Hyster and plaintiff that inducement by Hyster of plaintiff’s employees to leave plaintiff’s employ and enter that of Hyster is actionable, since its real purpose was the appropriation by Hyster of plaintiff’s sales organization and good will.
*376 We have held that the requirement that there he actual malice in the inducement of a breach of contract has been abandoned (Lamb v. Cheney & Son, 227 N. Y. 418; Campbell v. Gates, 236 N. Y. 457), and interference with pre-contractual relations is actionable where a contract would have been entered into had it not been for the malicious conduct of a third person (Keviczky v. Lorber, 290 N. Y. 297, 306; Union Car Adv. Co. v. Collier, 263 N. Y. 386, 401). It has also been held that in certain cases interference with at will agreements will be actionable (see Federal Waste Paper Corp. v. Garment Center Capitol, 268 App. Div. 230, 234, affd. 294 N. Y. 714; American League Baseball Club of N. Y. v. Pasquel, 187 Misc. 230, 232-233; Van Wyck v. Mannino, 256 App. Div. 256; see, also, 26 A. L. R 2d 1227, 1258; Prosser on Torts [2d ed.], § 106, pp. 726-727).
Defendants contend — and it was the position of two of the Justices of the Appellate Division — that interference with at will relationships is only actionable when it is accomplished by means which are themselves tortious, or is motivated solely by malice. The rule as stated in Coleman & Morris v. Pisciotta (279 App. Div. 656) is that the conduct would be actionable if the motive of the actor were solely to produce damage or the means used were unfair or dishonest. The requirements under this criterion were found to be satisfied by the allegations in the first cause of action by Special Term and three Justices of the Appellate Division.
In the present case we are not dealing with " competition between economic equals, but rather with the destruction of a relationship between the manufacturer and the distributor, which is recognized to be that of dependency of the latter upon the former (see Brown and Conwill, Automobile Manufacturer-Dealer Legislation, 57 Col. L. Rev. 219; Statement of Governor Harriman relating to purpose of General Business Law, § 197, 1956 McKinney’s Session Laws, p. 1705). This dominance taken alone may be insufficient to show such a relation of confidence as would make the action by Hyster here actionable. Absent the relation of confidence between the parties, the complaint would not state facts sufficient to constitute a cause of action (Beardsley v. Kilmer, 236 N. Y. 80; Reinforce, Inc., v. Birney, 308 N. Y. 164, 169-170; Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79; American Guild of Musical Artists *377 v. Petrillo, 286 N. Y. 226, 231; Opera on Tour v. Weber, 285 N. Y. 348, 355-356). Here, however, there are a number of provisions in the contract which indicate the existence of this relation. Pursuant to the contract submitted to the courts below, plaintiff was obliged to make its lists of prospective customers available to Hyster; to keep records of its demonstrating, canvassing and soliciting available to Hyster; to give Hyster reports on its inventory and its financial condition, or “ any other information regarding The Dealer’s business which may be reasonably required by Hyster ”. We therefore conclude that the complaint states a cause of action.
2. Plaintiff alleges in its second cause of action that its employee Chester, though bound by the terms of his employment agreement with plaintiff “ to give his ‘ time and services exclusively to selling the products sold or distributed ’ by the plaintiff ”, committed a number of acts inconsistent with the duty of fidelity that he owed to plaintiff in that he (1) negotiated with Hyster for a dealership in competition with plaintiff; (2) defamed plaintiff to Hyster; (3) induced Shoriak, O’Neill and Koziara to terminate their employment agreements with plaintiff; (4) induced Hyster to terminate its distributorship agreement with plaintiff, and (5) aided Hyster in its plan to place itself in a favored position for the termination of plaintiff’s distributorship, without a break in the sales representation, for the purpose of injuring plaintiff and destroying its business.
All of the Judges below found that these allegations sufficiently stated facts constituting a cause of action by plaintiff against Chester, and we agree. It is perfectly clear that the acts alleged were inconsistent with Chester’s duty of fidelity toward plaintiff (Duane Jones Co. v. Burke, 306 N. Y. 172, 187-188; Lamdin v. Broadway Surface Adv. Co., 272 N. Y. 133, 138; 4 Williston on Contracts [rev. ed.], § 1022). These actions on his part were not, as claimed, merely planning for new employment after leaving plaintiff’s employ; they were acts committed on the time of his employer, and intended to interfere with then existing agreements between his employer and other employees, and between his employer and Hyster, and participation in a plan deliberately designed to destroy his employer’s business.
3. For a third cause of action, plaintiff alleges that Shaffer, a district manager for Hyster, having notice of the. employment *378 agreements between plaintiff and Chester, Shoriak, O’Neill and Koziara, maliciously induced Chester to ‘ ‘ violate, repudiate and breach ” his agreement, fomented discontent and dissension between plaintiff and the other named employees, and maliciously induced, enticed and procured them to terminate their agreements with plaintiff and enter the employ of Hyster. It is further alleged that Shaffer, knowing of plaintiff’s distributorship agreement with Hyster, maliciously induced Hyster to terminate it; that he thus acted “ to destroy plaintiff’s business so that defendant Hyster Company would terminate plaintiff’s distributorship and elevate said defendant Don E. Shaffer to the position of New York Branch Manager ”.
It has been held by the lower courts that if an officer of a corporation, acting on behalf of the corporation and within the scope of his authority, induces the corporation to break a contract it has with a third party, the corporate officer is not personally liable unless his activity involves individual separate tortious acts (Buckley v. 112 Central Park South, 285 App. Div. 331, 333-334; Greyhound Corp. v. Commercial Cas. Ins. Co., 259 App. Div. 317; Moskowitz v. Feuer, 265 App. Div. 884, affd. generally 291 N. Y. 568; cf. Ehrlich v. Alper, 1 A D 2d 875; Navarro v. Fiorita, 271 App. Div. 62, affd. 296 N. Y. 783). On this ground, the allegation that Shaffer induced Hyster to terminate its contract with plaintiff was stricken by Special Term. It was not disturbed by the Appellate Division, no appeal was taken from that determination, and it is not presently before us.
The remainder of the cause of action deals with conduct different from inducing the corporation to breach a contract to which it is a party. It alleges that Shaffer maliciously interfered with contractual relations between plaintiff and its employees. With regard to the sufficiency of these allegations, defendants contend that they fail to state a cause of action because Shaffer acted as agent for Hyster and shared whatever privilege Hyster had to recruit plaintiff’s employees. As already noted with respect to the first cause of action, Hyster may not be ‘ ‘ privileged ’ ’, under the facts alleged, to interfere with the contractual relations between plaintiff and its employees.
The real issue here presented is whether Shaffer, either acting within the scope of his authority as district manager and factory *379 liaison, or outside the scope of his authority as an individual, is liable for maliciously interfering with the contractual relations between plaintiff and its employees. Whether or not there would be personal liability on the part of Shaffer if it were proven that he performed the acts within the scope of his authority — and this is not alleged in the complaint — the fact remains that if the acts were performed by him outside the scope of his authority, and were maliciously designed to destroy plaintiff’s business for the personal profit of Shaffer, they are actionable. In such case, moreover, Shaffer as an individual is not a competitor of plaintiff, and he cannot claim any status as such. Hence, the third cause of action may standj . 4. In the fourth cause of action, plaintiff alleges that Shaffer, Chester and Hyster, each for his own economic advantage, conspired with one another and formed a common plan to injure plaintiff and destroy its business. Pursuant to this plan, it was agreed that if Hyster should terminate plaintiff’s distributorship, it would hire Chester; in return for which Chester promised that he and Shaffer would foment discontent and dissension between plaintiff and its employees for the purpose of inducing them to terminate their agreements with plaintiff and enter the employ of Hyster. Chester and Shaffer also are alleged to have induced Hyster to terminate its agreement with plaintiff. As a result of these acts, plaintiff alleges that all interfered with plaintiff’s agreements with its employees, and that Hyster terminated its distributorship agreement 1 ‘ which termination would not have occurred but for the unlawful exchange of assurances between and among the defendants as heretofore alleged ’ ’.
Defendants here claim that the cause of action is insufficiently stated in that it does not set forth any tortious act committed pursuant to the alleged plan. As has been stated above — and certainly with regard to the breach of fidelity by Chester — a tortious act was committed pursuant to the plan. The case is clearly within the rule of Duane Jones Co. v. Burke (306 N. Y. 172, supra) in which we upheld a judgment based on a conspiracy among certain employees to destroy their employer’s advertising agency by soliciting clients and key personnel to transfer their business relations from their employer to a new agency they were to set up.
*380 The actions of the defendants here, as elsewhere, are attempted to be justified by them because they were undertaken allegedly for the purpose of achieving pecuniary gain, and not solely for the purpose of injuring plaintiff. The case upon which they largely rely is Crofter Hand Woven Harris Tweed Co. v. Veitch ([1942] A. C. 435). But in that case it was stated (p. 446): “I am content to say that, unless the real and predominant purpose is to advance the defendants’ lawful interests in a matter where the defendants honestly believe that those interests would directly suffer if the action taken against the plaintiffs was not taken, a combination wilfully to damage a man in his trade is unlawful.”
The Appellate Division was correct in sustaining this cause of action.
5. Plaintiff alleges in its fifth cause of action that it and Hyster, an Oregon corporation doing business in New York, entered into an agreement upon a printed form prepared by Hyster on November 1, 1950 which required plaintiff to (1) maintain a suitable place of business with adequate stocks of Hyster’s products, and to house, protect and display them; (2) employ mechanics and provide service shop facilities for the products; (3) instruct purchasers in the operation, use and care of products sold; (4) advertise Hyster products, and maintain a record of owners and prospective purchasers of Hyster’s products; (5) solicit orders for Hyster’s products in the territory designated by the agreement, and maintain records of solicitation and sales as well as records of its financial condition, all of the records mentioned being for Hyster’s inspection. The agreement also provided that either party might terminate it “at any time ”, and that it was to be construed in accordance with the laws of Oregon.
It is further alleged that upon a number of occasions following the execution of this agreement, Hyster through a duly authorized representative orally promised that if plaintiff would (1) continue to maintain its sales force, though Hyster was not then manufacturing a sufficient quantity of machines to keep them employed; (2) advertise for additional salesmen, not then needed; (3) train new salesmen; (4) invest additional money in tools, equipment and personnel in excess of that then required, and (5) incur additional advertising and long-range sales promotion expenses, Hyster agreed to “a continuing *381 dealer relationship of long duration ” which would not be terminated by defendant Hyster without just cause or reason and upon reasonable notice.
Plaintiff then alleges that the agreement of November 1, 1950 permitted Hyster to terminate it only upon reasonable notice, and that under the oral modification of the agreement it could be terminated only for just cause and upon reasonable notice. Despite the fact that plaintiff duly performed all the conditions of the 1950 agreement, and the oral modifications of it, and that Hyster had advised plaintiff that its performance was satisfactory, Hyster, in violation of both the agreement of November, 1950 and the oral modifications of it, “ arbitrarily and capriciously terminal[ed] plaintiff’s distributorship on August 12, 1952 without just cause or reason and without reasonable notice (said termination purporting to take effect immediately).”
Plaintiff further alleges that, as a result of the breach of the agreement of November, 1950, it was damaged by the loss of $220,000 which it was entitled to earn under the agreement, and by virtue of the breach of the oral modification of the agreement it was additionally damaged to the extent of $55,000 which it would have earned between the time of termination and the end of a reasonable period of notice when plaintiff’s agreement would have been terminated for cause.
As to the alleged breach of the 1950 agreement, plaintiff claims that the printed terms were ambiguous and should be read to give both parties the power to terminate the agreement at any time upon reasonable notice. Reference to the actual clause of the agreement submitted below shows that plaintiff’s claim of the existence of an ambiguity is wholly without merit. Plaintiff next contends that even though the contract did not so provide, the court should read in a requirement that the power of termination be exercised only upon reasonable notice. Although Oregon law controls the construction of this agreement, since the parties intended it to be applicable and it has a reasonable relation to it (Companía de Inversiones Internacionales v. Industrial Mtge. Bank, 269 N. Y. 22, 26; Dougherty v. Equitable Life Assur. Soc., 266 N. Y. 71, 80), no cases of that State are presented to us which have considered this problem.
Authorities cited by plaintiff in support of its contention that courts read in requirements of reasonable notice in distributor *382 ship contracts are not apt. They state the rule that where there are no provisions in a manufacturer-dealer contract as to termination, the manufacturer will only be allowed to terminate the agreement after reasonable notice (Allied Equipment Co. v. Weber Engineered Prods., 237 F. 2d 879; Jack’s Cookie Co. v. Brooks, 227 F. 2d 935, cert. denied 351 U. S. 908; 4 Williston on Contracts [rev. ed.], § 1027A; Suslak v. Rokeach & Sons, 269 App. Div. 779, affd. 295 N. Y. 799). But where as here the parties have agreed to a termination clause, the clause has been enforced as written (New York Tel. Co. v. Jamestown Tel. Corp., 282 N. Y. 365, 372-373; Bushwick-Decatur Motors v. Ford Motor Co., 116 F. 2d 675; Biever Motor Car Co. v. Chrysler Corp., 108 F. Supp. 948, affd. 199 F. 2d 758; Sharpe v. Great Lakes Steel Corp., 9 F. R. D. 691, 693; cf. Sylvan Crest Sand & Gravel Co. v. United States, 150 F. 2d 642). The parties assented to the terms of the contract when they entered into it, and no reason is now presented which justifies altering the clear provisions of the agreement. Thus the fifth cause of action insofar as it rests upon a breach of the agreement of November, 1950 is insufficient.
The complaint also alleges, however, that the action of Hyster was in violation of oral agreements entered into after that date, and it is to the validity of these agreements that we now turn. The argument that these agreements are unenforcible because they violate section 33-c of the Personal Property Law is not well taken upon this motion addressed to the face of the complaint, since it is alleged therein that Oregon law was agreed to govern the contract. Under that law, parties may orally modify written agreements (Marnon v. Vaughn Motor Co., 184 Ore. 103,156-160; Pippy v. Winslow, 62 Ore. 219, 224; Lease v. Corvallis Sand & Gravel Co., 185 F. 2d 570, 576 [using Oregon law]). The public policy of this State does not prevent the enforcement of an oral modification of a commercial contract where the modification is a valid exercise of powers given the parties by the law governing the agreement (see Rubin v. Irving Trust Co., 305 N. Y. 288, 300).
By the oral agreement alleged, a distributorship of indefinite duration arose, and Hyster agreed that it would not terminate that distributorship except ‘ ‘ upon just cause or reason and upon reasonable notice ’ ’. The previous provisions for termination were thereby amended and as amended are definite enough *383 to be on forcible (Boulevard Airport v. Consolidated Vultee Aircraft Corp., 85 F. Supp. 876). Thus this cause of action on its face is sufficient.
6. The sixth cause of action is grounded in fraud, and repeats many allegations of the fifth which is based on contract. It further alleges that from 1950 on Hyster repeatedly assured plaintiff of the permanency of the distributorship, and that its contract would not be cancelled without just cause or in an unfair or inequitable manner, and that plaintiff’s investment in the distributorship was safe because the permanent relationship of the parties would bring in large profits. The false representation that plaintiff’s distributorship would not be terminated except for cause and upon reasonable notice, if knowingly made, with the then present intention of nonperformance, and relied upon to the injury of plaintiff, is actionable.
While it is true that the theory of the measure of damages alleged in the complaint may not be the correct one, and indeed does not proceed upon a definite, clear and certain basis, plaintiff is not restricted to proof on a theory which may not be sustained. The fact that it mistook the true rule of damages is not material. There is no requirement that the measure of damages be stated in the complaint so long as facts are alleged from which damages may properly be inferred (Lurie v. New Amsterdam Cas. Co., 270 N. Y. 379; Colrick v. Swinburne, 105 N. Y. 503; Winter v. American Aniline Prods., 236 N. Y. 199, 204). Plaintiff here has alleged such facts and that by reason thereof it has suffered damages. Thus this cause of action is sufficient as matter of law.
Accordingly, the judgment appealed from should be reversed, and that portion of the order of Special Term as sustains the fifth and sixth causes of action should be reinstated; and so much of the order of the Appellate Division appealed from as relates to the first four causes of action should be affirmed, with costs. Each of the four questions certified should be answered in the affirmative.
Conway, Ch. J., Desmond, Dye and Burke, JJ., concur with Froessel, J.; Fuld, J., concurs in result; Van Voorhis, J., dissents and votes to modify the order of the Appellate Division so as to dismiss the first and third causes of action without leave to replead, and, as so modified, to affirm, for the reasons stated in the dissenting opinion in the Appellate Division of Breitel, J.
*384 Upon appeal from judgment: Judgment of the Appellate Division reversed and so much of the order of Special Term as sustains the fifth and sixth causes of action reinstated, with costs in this court and in the Appellate Division.
Upon appeal from order: Order affirmed. Four questions certified answered in the affirmative.