A. Franklin Mahoney, J.
The defendant municipal corporation and the individual defendants, both as city officials and individually, seek an order pursuant to CPLR 3211 (subd [a], par 7) dismissing the complaint for failure to state a cause of action or, alternatively, requiring the plaintiff to separately *197 state and number the several causes of action pleaded in the fifth cause of action of the complaint.
Plaintiff De Santis was duly appointed City Manager of the City of Troy on February 11, 1970 pursuant to section 3.00 of the then Charter of the City of Troy (Local Law No. 3, 1959 [published in Local Laws of 1963, p. 638 et seq.]). The effective date of the appointment was February 23, 1970. Also, on February 11, 1970, by a resolution duly passed, the then Acting City Manager, Leo Quigley, was authorized to execute on behalf of the city a contract with the new City Manager, plaintiff herein, for consultant services to be performed by Mr. De Santis upon his termination as manager at a monthly fee equal to one twelfth his annual salary and for various lengths of time, dependent upon the date of termination. This contract, though authorized on February 11, 1970, was not executed until February 24, 1970, one day after the plaintiff was sworn in as City Manager, and was signed by plaintiff and by the former Acting City Manager. Thereafter, on December 8, 1971, after a general election in November, 1971 had materially changed the personnel of the City Council as it would exist after January 1, 1972, the expiring City Council, by resolution, modified the consultant contract, signed on February 24, 1970, and, further, authorized the Mayor of the City of Troy to execute the modification on behalf of the City of Troy. The Mayor and plaintiff herein signed the modification agreement on December 9, 1971.
The newly elected City Council took office on January 1, 1972 and on March 4, 1972, acting pursuant to authority vested in it by section 3.00 of the City Charter (Local Law No. 3, 1959), removed the plaintiff for cause and terminated his employment as City Manager for the City of Troy. On March 13, 1972 the plaintiff notified the city, in writing, of his availability and willingness to act as a consultant in accordance with the contract dated February 24, 1970 as amended on December 9, 1971. The city refused and this action ensued.
All of the defendants move to dismiss the first three causes of action based on contract on the ground that the subject contract is void because (a) it extended beyond the duration of the term of the City Council which approved the same, and (b) violated the applicable provisions of the General Municipal Law (General Municipal Law §§ 801, 804).
The first ground raised by defendants for dismissal brings into issue the ancient dichotomy of characterizing acts of *198 municipalities as being governmental or proprietary. If an act, such as contracting with a specific individual for services, is determined to be governmental in nature, then the contract is void if, by its terms, it provides for the rendition of compensable services to the municipality beyond the duration of the board or council that authorized the contract. (Edsall v Wheler, 29 AD2d 622; 40 NY Jur, Municipal Corporations, § 809.) If, on the other hand, such a contract be deemed proprietary in nature, then it is not subject to attack merely because the services to be rendered cover a period of time beyond the duration of the board or council authorizing the contract. (McQuillin, Municipal Corporations [3d ed, 1950], § 10.05.)
Whether the subject contract is governmental or proprietary in nature is wholly dependent upon its construction as either an exercise of delegated power in furtherance of local self-government, which would characterize it as proprietary, or as being an act of sovereignty, which would define the act as being governmental in nature. If the subject contract should be construed as being proprietary in nature, then the first ground urged for dismissal of the complaint could not be sustained; if construed as governmental, then the contract would be ultra vires and void. However, the court finds it unnecessary to attempt to define the tenuous distinction that exists between proprietary and governmental municipal acts, not only because the distinction is difficult to discern or perceive but because it is unnecessary to do so to resolve the issue of complaint dismissal as to the first three causes of action based upon contract. Those three causes of action are dismissed for the following reasons:
Section 2 of article XIII of the New York State Constitution, provides: "When the duration of any office is not provided by this constitution it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment.” The duration of the office of City Manager for the City of Troy is not provided for by the Constitution. Section 3.00 of the Charter of the City of Troy (Local Law No. 3, 1959), with respect to the hiring of a City Manager, states: "He shall be appointed by the city council for an indefinite term of office on the basis of executive qualifications and experience. He may be suspended or removed from office at any time by the council.”
Juxtaposition of the quoted provisions of the Constitution *199 and the City Charter leads inexorably to the conclusion that the city could not contract for the services of a City Manager for a definite term. The City of Troy was aware of this prohibition prior to the hiring of the plaintiff herein as it had sought the advice of the Attorney-General with respect to the issue of duration and had been advised by informal opinion, dated October 24, 1969, that a contract for a prescribed duration was unlawful. Yet, on February 11, 1970, the City Council passed two resolutions, one appointing the plaintiff City Manager, effective February 23, 1970, at an annual salary of $27,000 and another committing the city to another contract of employment with plaintiff. The second resolution required the city to retain Mr. De Santis as a consultant for a specific monthly salary for a definite period, the city being required to compensate the plaintiff for a period of 12 months if his services as City Manager should be terminated before February 23, 1971, and for a period of six months if said services should be terminated after February 23, 1971.
While it might be argued that the two contracts, one hiring the plaintiff as City Manager and the other retaining his services beyond the time of his termination, are mutually exclusive, and that his period of employment was not for a definite duration, as prohibited by the charter, since he could have been terminated at any time under the first contract and that the second contract only came into effect after the council exercised its discretion to terminate his employment for cause, I find the two resolutions of February 11, 1970 and the two contracts to be coextensive and intentionally drawn to avoid the mandate of the charter that the term of the City Manager not be for a definite period.
When Mr. De Santis entered upon the discharge of his duties as City Manager on February 23, 1970 and signed the consultant services contract on February 24, 1970, he knew, and the City Council knew, that his final discharge from employment was not absolutely indefinite but, rather, was mathematically measurable from the date of his discharge under the provisions of his first contract. To accept the argument that he would no longer be the manager while he was being paid as a consultant would be tantamount to judicial recognition that the Constitution and the generic law derivative therefrom can be changed by device rather than by amendment. This court cannot condone such a scheme.
Next, although the resolution authorizing the hiring of the *200 plaintiff herein was dated February 11, 1970, he did not assume office until February 23, 1970. The so-called consultant contract was executed on February 24, 1970 between the plaintiff and the former Acting City Manager on behalf of the city. Clearly, if the plaintiff became City Manager on February 24, 1970, Mr. Quigley was no longer Acting City Manager and was without authority, real or apparent, to execute the consultant contract on behalf of the City of Troy. On February 24, 1970 the plaintiff was the City Manager of the City of Troy and he alone, pursuant to section 3.09 of the Charter (Local Law No. 3, 1959, as amd Local Law No. 1, 1968), had authority to retain consultants to the city. Therefore, his act of signing the contract, which resulted in retaining himself, was a conflict of interest prohibited by section 801 of the General Municipal Law which, so far as pertinent herein, states: "Except as provided in section eight hundred two of this chapter, (1) no municipal officer or employee shall have an interest in any contract with the municipality of which he is an officer or employee, when such officer or employee, individually or as a member of a board, has the power or duty to (a) negotiate, prepare, authorize or approve the contract or authorize or approve payment thereunder”. When a city official or employee so acts, his action is proscribed by the provisions of section 804 of the General Municipal Law, which states: "Any contract willfully entered into by or with a municipality in which there is an interest prohibited by this article shall be null, void and wholly unenforceable.”
Since the original consultant contract, dated February 24, 1970, is fatally defective, consideration need not be given to the former Mayor’s authority to execute the amended contract dated December 9, 1971.
Accordingly, the motion by the defendants to dismiss the first three causes of action based on contract is granted.
Next, the fourth cause of action of the complaint alleges that the individually named defendants, present and former members of the City Council, induced the City of Troy to breach its contract with plaintiff De Santis. Since, in my view, for the reasons given above, section 804 of the General Municipal Law makes the subject contract a nullity it must be declared to be void ab initio. Accordingly, it was never an-enforceable contract and the individually named defendants cannot be held responsible for the city’s refusal to honor the *201 same. The fourth cause of action is dismissed as to all defendants.
The fifth cause of action against the individual defendants, after realleging paragraphs "Fifth” and "Sixth” of the first cause of action to the end that the named defendants were agents of the City Council and the City of Troy regarding all acts herein complained of, goes on to allege in paragraphs "Forty-Second” through "Forty-Sixth”, inclusive, that said individually named defendants did "willfully and knowingly conspire together and did willfully, knowingly, maliciously, intentionally and without reasonable justification or excuse, induce, persuade and otherwise entice various of plaintiff’s prospective employers to terminate negotiations with the plaintiff, and to refuse to employ the plaintiff, and the defendants did otherwise interfere with the prospective contractual relations between the plaintiff and various of his prospective employers” and, further, "by reason of the fact that various of plaintiff’s prospective employers were induced, persuaded and otherwise enticed by the defendants * * * and by reason of other acts of defendants * * * plaintiff was unable to find a permanent position in his chosen profession for many months longer than would have otherwise been the case.”
These allegations do not allege a tort of interference with a contract. To do so the contract allegedly interfered with must be existing. That is not the case herein. However, there is a cognizable cause of action known as interference with prospective advantage. This is a business tort. (See Prosser, Law of Torts [3d ed], p 973; 32 NY Jur, Interference, §§ 40-48.) Plaintiff must, however, aver or plead that but for the interference a contract would have been consummated, not just that it was reasonably certain that a contract would come into being. (A. S. Rampell, Inc. v Hyster Co., 3 NY2d 369.) In Williams & Co. v Collins Tuttle & Co. (6 AD2d 302) Justice Breitel, now Chief Judge of the Court of Appeals, stated (p 306) that "Where liability is to be imposed for preventing one from making a particular contract, the courts have required more than a showing of qualified probability that the contract would have been completed but for the tortious interference. As a consequence plaintiff must allege (emphasis supplied) at least that 'it would have received’ the contract.” Next, Justice Breitel in Williams & Co. (supra, p 307) cites with approval the case of Union Car Adv. Co. v Collier (263 NY 386, 401) wherein it was stated "A cause of action has also been *202 recognized where a party would have received a contract but for the malicious, fraudulent and deceitful acts of a third party, such, for instance, as materially lying about him.” Justice Breitel went on to say (Williams & Co., supra, p 307) that the "would have received the contract” test is a stringent one. It is even a more stringent test than "reasonably certain” or "reasonable expectation”, both of which expressions were rejected in the Union Car case (supra).
Using the "would have received the contract” guideline in the case at bar, this court has little difficulty in finding that the allegations of the fifth cause of action fall far short of alleging the requisite cause of action which would permit the plaintiff to introduce the high standard of proof required to make out a cause of action for interfering with a prospective business advantage. The plaintiff merely alleges that the conduct of the individually named defendants interfered with his "prospective contractual relations with various prospective employers”, and that he "was unable to find a permanent position in his chosen profession for many months longer than would have otherwise been the case.” These allegations do not even meet the "reasonably certain” or "reasonable expectation” tests which were found wanting in the Union Car case (supra). Accordingly, the fifth cause of action is dismissed.
In sum, all five causes of action having been found wanting, the complaint is dismissed.