205 N.J. Super. 189 (1985)
500 A.2d 712
AVTEC INDUSTRIES, INC., PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
SONY CORPORATION OF AMERICA, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1985.
Decided October 7, 1985.
*190 Before Judges DREIER and BILDER.
Richard M. Goldman argued the cause for appellant and cross-respondent (Franzblau, Falkin & Goldman, P.A., attorneys; Richard M. Goldman, on brief).
Richard F. Collier, Jr. argued the cause for respondent and cross-appellant (Norris, McLaughlin & Marcus, attorneys; Richard F. Collier, Jr. and Toni L. Imfeld, on the brief). Frederic J. Tauber and Paula Duffy of counsel.
The opinion of the court was delivered by BILDER, J.A.D.
This case involves liability for inducing an employee to change jobs  sometimes referred to as employee piracy. Plaintiff Avtec Industries, Inc. (Avtec) appeals from a judgment notwithstanding the verdict dismissing a claim for damages for the wrongful solicitation of one of its employees by defendant Sony Corporation of America (Sony). Sony cross-appeals from denial of its motion for summary judgment.
Plaintiff Avtec is engaged in the business of installing and servicing video and audio systems. It has rendered engineering and maintenance services to such companies as AT&T, Public Service Electric & Gas, Georgia Power and Morgan, Stanley & Co. In furtherance of its business it has non-exclusive dealership agreements with defendant Sony as well as a number of other large manufacturers such as General Instrument, Panasonic, Dukane and Techtronics. Its dealership agreement with Sony required it to maintain a warranty service and, at its own *191 expense, "to have at least one of its technically oriented personnel, with an electronics background, trained at a service school designated by [Sony]."
In March 1981 Avtec hired Serge Caleca as a video technician in its service department. He came to the job with two years of college training as well as prior work experience to which additional on-the-job training was added by Avtec. When Avtec entered into the agreement with Sony in January 1982, it sent four of its employees, including Caleca, to the Sony school. It also sent Caleca to three different Sony seminars during the following months.
The training received by Caleca and his co-employees was intended to increase their proficiency in servicing Sony products, but their duties were by no means limited to that endeavor. Avtec had serviced Sony products before the agreement and continued at about the same rate after becoming a dealer. Its service department noticed no change in the work load. On the average Caleca spent about two or three hours a week on Sony equipment.
When Caleca attended the seminars he apparently made a sufficiently favorable impression on the man responsible for Sony's technical training courses, Nicholas DiLello, that he called Caleca when one of the instructor positions became vacant. While at the seminars Caleca had expressed interest in working for Sony. A Sony instructor resigned in July 1982 and none of the 30 applicants obtained by newspaper ads were found to be qualified for the position. In August DiLello called Caleca to see if he would be interested. Caleca applied for the position and in September left Avtec and started working for Sony.
In his testimony Caleca gave a number of reasons for the change. His salary increased from $18,000 to $21,000. The fringe benefits were better. And he felt the opportunities for advancement were better. The preceding April a new man had been hired by Avtec as manager of the service department, *192 leaving Caleca with a feeling that with no engineering background he had "nowhere to go."
Caleca had no written contract with Avtec. It was undisputed he was an at-will employee. He left after about 20 days notice; Avtec did not deny his right to do so. It charged, however, that Sony, as a result of the dealership agreement held a position of trust with respect to Avtec and that it maliciously interfered with Avtec's contractual relationship with Caleca by hiring him away.
Before filing an answer to Avtec's complaint, Sony moved for summary judgment arguing that Avtec had failed to state a legal claim. It is from the denial of that motion that Sony has cross-appealed.
The case was tried before a jury and resulted in a verdict in favor of Avtec for $17,395.63. In answer to special interrogatories the jury determined that there was no dominant confidential relationship between Sony and Avtec and that Sony acted in good faith and without malice. But it also found that Sony "act[ed] in an unfair manner or violate[d] generally accepted standards of common morality in hiring Mr. Caleca" and "used wrongful means in hiring [him]."
Sony had unsuccessfully moved for involuntary dismissal at the close of plaintiff's evidence. When it renewed the motion at the close of all the evidence, the trial judge reserved decision. About a week later he issued a letter opinion granting that motion. R. 4:40-2(a). Avtec appeals from that judgment.

I
Simply stated, we are asked to decide whether a manufacturer can be liable to one who is a non-exclusive dealer for a number of manufacturers when it hires away one of its key at-will service employees. Avtec says the hiring amounts to an intentional interference for which it is entitled to consequential damages  here the cost of retraining a replacement, as well as *193 the added costs imposed in the meantime by the pirated employee's absence.
That Sony intentionally interfered with the employee-employer relationship between Caleca and Avtec is unquestionable. It was well aware of that relationship and induced Caleca to change jobs by offering him better terms. The at-will nature of the relationship was irrelevant vis-a-vis Sony because Caleca's right to leave does not furnish Sony with a right to interfere. See Wear-Ever Aluminum, Inc. v. Townecraft, etc., Inc., 75 N.J. Super. 135, 144-145 (Ch.Div. 1962); 4 Restatement, Torts 2d, § 766, comment g at 10-11 (1979). The true issue is whether interference was improper. Id., comment a at 7-8.
The general principles with respect to interference with advantageous relations, particularly as applied to employee piracy, were examined at some length by Justice (then Judge) Pashman in Wear-Ever Aluminum, supra. The mere persuasion of an employee to change jobs is not wrongful; but if it is done to injure the employer, it is wrongful. Id. at 142. It is undisputed that Caleca was not hired to injure Avtec. And it would have been wrongful if done to benefit the "raider" at the employer's expense "[unless] done in the exercise of an equal or superior right." Ibid. The right to compete for employees is such an equal right provided it is not done by improper means. Ibid. "The justification must be as broad as the act, and must cover not only the motive and the purpose, or, in other words, the object sought, but also the means used." Ibid.
In the Restatement of Torts the principle is stated thus:
One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
(a) the relation concerns a matter involved in the competition between the actor and the other and
(b) the actor does not employ wrongful means and
(c) his action does not create or continue an unlawful restraint of trade and

*194 (d) his purpose is at least in part to advance his interest in competing with the other.
[4 Restatement, Torts 2d, § 768(1) (1979)]
Avtec and Sony were clearly competing for skilled technicians from the same labor pool. See Restaurant Associates, etc. v. Anheuser-Busch, Inc., 422 F. Supp. 1105, 1110, n. 4 (S.D.N.Y. 1976). No restraint of trade has been alleged and Sony's purpose was clearly to advance its own interest in hiring competent employees. It is by the means used that Sony's right to interfere with Caleca's subsisting employment must be determined.
The general rule appears to be that the mere inducement of an employee to move to a competitor is not in itself actionable where the employment is terminable at will, but that such inducement is actionable if the party offering the inducement either has an unlawful or improper purpose or uses unlawful or improper means.
[Annotation, "Liability for inducing employee not engaged for definite term to move to competitor," 24 A.L.R.3d 821, § 2[a] at 823 (1969)]
See also Prosser & Keeton, Torts (5th ed. 1984), § 129 at 982-983.
"Improper means" is a hazy term, difficult to define. It clearly includes such conduct as fraud, misrepresentation, intimidation, obstruction and molestation. Wear-Ever Aluminum, supra at 142. But it goes further and includes conduct which fails to accord with generally accepted standards of morality. See Leslie Blau Co. v. Alfieri, 157 N.J. Super. 173, 189 (App.Div. 1978), certif. den. 77 N.J. 510 (1978).
The principles of tortious interference are amorphous. Each case must be decided on its own facts. "The very nature of the tort prohibits a `rule of thumb' in every case." See Leslie Blau, supra at 187. In its flexibility, the law must be equal to its task whatever the form of improper conduct. In Sustick v. Slatina, 48 N.J. Super. 134 (App.Div. 1957), we stated it thus:
In this area of the law the use of such expressions as conspire, unlawful, malicious, etc. has been criticized as beclouding judgment and clear thinking in the formulation of rules of liability. See Weinstein v. Clementsen, 20 N.J. Super. 367, 371 (App.Div. 1952). Yet a degree of generality in the criteria which will suffice to spell out liability in any given case of this kind is unavoidable. *195 The essence of the cases in this field is that in adjudging whether what the defendant has done is actionable, i.e., not done in the exercise of an equal or superior right, the ultimate inquiry is whether the conduct was "both injurious and transgressive of generally accepted standards of common morality or of law." Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 255 (App.Div. 1957). In other words, was the interference by defendant "sanctioned by the `rules of the game.'" 1 Harper and James [Torts], op. cit. supra, § 6.11, p. 510 [1956]; cf. Trautwein v. Harbourt, 40 N.J. Super. 247, 267, 268 (App.Div. 1956). There can be no tighter test of liability in this area than that of the common conception of what is right and just dealing under the circumstances. Not only must defendants' motive and purpose be proper but so also must the means. Louis Kamm, Inc., v. Flink, supra (113 N.J.L., 582, at p. 589). [Id. at 144]
In the instant case, the jury in response to a special interrogatory determined that Sony had violated generally accepted standards of morality by hiring Caleca and that the means used were wrongful. What did Sony do to make it thus liable? The same jury found Sony was not motivated by malice nor did it stand in any dominant confidential relationship to Avtec.
An examination of the cases in which interference has been found discloses egregious conduct directed toward destruction of a competitor's business. Thus, in Wear-Ever Aluminum, supra, there was a deceit practiced in which the defendant secretly used Wear-Ever's zone manager to induce its entire Philadelphia sales force to desert to the defendant-competitor. And in A.S. Rampell, Inc. v. Hyster Company, 3 N.Y.2d 369, 144 N.E.2d 371, 165 N.Y.S.2d 475 (Ct.App. 1957), relied upon heavily by plaintiff, Hyster was charged with interfering with employment relationships in order to destroy the existing manufacturer-dealer relationship and appropriate Rampell's sales organization and good will. We have been shown no case in which the wrongful means did not involve predatory conduct such as deceit or intended harm to the plaintiff. See cases collected in Annotation, 24 A.L.R.3d 821, § 4(a). Nor have we found any. In Restaurant Associates, supra, the court spoke of wrongful means in terms of fraud or coercion.
The privilege [to interfere with an at-will employment relationship] may be defeated if the actor employs improper means or evinces improper motivation. *196 However, in the present case Busch's conduct was unmarked by fraud or coercion and there is no evidence of a purpose to cripple Associates.
[Id. at 111]
In oft-cited dicta, Learned Hand said:
So far as we have found, it has never been thought actionable to take away another's employee, when the defendant wants to use him in his own business, however much the plaintiff may suffer. It is difficult to see how servants could get the full value of their services on any other terms; time creates no prescriptive right in other men's labor. If any employer expects so much, he must secure it by contract. Harley & Lund Corp. v. Murray Rubber Co., 31 F.2d 932, 934 (2d Cir.), cert. denied, 279 U.S. 872, 49 S.Ct. 513, 73 L.Ed. 1007 (1929).
Nobody has ever thought, so far as we can find, that in the absence of some monopolistic purpose every one has not the right to offer better terms to another's employe[e], so long as the latter is free to leave. The result of the contrary would be intolerable, both to such employers as could use the employe[e] more effectively and to such employe[e]s as might receive added pay. It would put an end to any kind of competition. Triangle Film Corp. v. Artcraft Pictures Corp., 250 F. 981, 982 (2d Cir.1918).
[Restaurant Associates, etc. at 111]
The jury's finding that Sony acted in good faith, without malice and without exploiting a confidential relationship precludes liability. Since we have decided the court's action in granting the judgment n.o.v. was correct, the cross-appeal is moot and we need not address it.
The judgment n.o.v. is affirmed.