OPINION OF THE COURT
Herman Cahn, J.
Plaintiff KSL Recreation Corporation (KSL) has moved to dismiss all of defendants’ counterclaims.
Defendant Boca Raton Hotel and Club Limited Partnership (Boca Partnership), a Florida limited partnership, owns the Boca Raton Resort and Club, located in Boca Raton, Florida. Defendants BRMC, L.P., a Delaware limited partnership, and BRMC, a Delaware corporation, are both general partners of Boca Partnership and have their principal place of business at 380 Lexington Avenue. Plaintiff KSL, also a Delaware corporation, has its principal place of business in La Quita, California.
On February 24, 1994, KSL and Boca Partnership executed a letter of intent, dated February 23, 1995, with an accompanying term sheet. The transaction, conceived as a joint venture, provided that KSL would arrange refinancing and recapitalization of the resort.
The letter of intent, drafted by KSL, provides that, pursuant to the conditions of the term sheet, defendants "will pay all expenses incurred by [KSL] in connection with the drafting and negotiation of definitive documentation.” Further, in the event that Boca Partnership enters into a "competing transaction,” it will pay $2.5 million to KSL upon the closing of the competing transaction unless "any term or provision of the transaction described in the * * * term sheet cannot reasonably be satisfied or complied with”.
In letters dated June 13, June 28 and July 8, 1994, Boca Partnership declared its termination of the agreement.[1] An August 3, 1994 letter also called for the return of proprietary information that had been provided to KSL for purposes of due diligence only. Subsequently, Boca Partnership entered into an agreement with Olympus Boca, L.P., which provided the needed refinancing. KSL brought the instant action for breach of contract, seeking $950,000 in damages for expenses and $2.5 million in damages for Boca Partnership’s allegedly entering a refinancing agreement that was a competing transaction.
Boca Partnership’s first counterclaim alleges tortious interference with contractual and prospective economic *21 relationships. The second counterclaim alleges prima facie tort. Both seek $1 million in compensatory damages and $10 million in punitive damages. The third counterclaim seeks specific performance of "KSL’s contractual obligation to return Boca Partnership’s proprietary information”.
At the time the letter of intent was executed, Boca Partnership had an outstanding promissory note payable in the amount of $55 million held by Starwood/Boca Partners, L.P. (the Starwood Note). Under the terms of the Starwood Note, if payment would be made in the first 10 days of October 1994, Boca Partnership would benefit from a $6 million prepayment incentive. (The date was extended to October 11th because the 10th was a legal holiday, Columbus Day.) Boca Partnership alleges that KSL knew about the above prepayment rights and knew that time was of the essence and "understood that the contemplated transaction had to close by May 31, 1994” (defendant’s mem, at 7) to allow time for Boca Partnership to locate an alternative source of funding for the prepayment in the event the transaction with KSL failed. Boca Partnership alleges that KSL failed to arrange "financing sufficient to close a transaction”. (Answer If 52.)
Boca Partnership alleges that when it sought alternative funding KSL "began to behave like a spurned suitor and attempted through self help to thwart Boca Partnership’s efforts to prepay the Starwood Note * * * [by] actively discouraging] potential lenders with whom Boca Partnership otherwise had reasonable prospects of dealing from entertaining any transaction with Boca Partnership”. Boca Partnership further alleges that KSL became aware that Boca Partnership was negotiating with nonparty Olympus Real Estate Corporation (Olympus), a joint venture between nonparty Hicks, Muse, Tate & Furst (Hicks Muse) and nonparty Donaldson, Lufkin & Jenrette Securities Corporation (DLJ). The transaction was allegedly to be funded primarily by DLJ. Several days prior to the closing date, KSL allegedly induced DLJ to decline to participate in the prepayment financing.
Over the Columbus Day weekend, Olympus found an alternative source of funding through Nationsbank. Boca Partnership alleges that KSL, knowing that Boca Partnership and Olympus Boca L.P. (the successors to Olympic Real Estate Corporation) intended to close the prepayment funding transaction, on October 11 faxed a summons and complaint in the instant action to Boca Partnership on October 10, 1994. Boca Partnership further alleges that KSL knew that Boca Partnership *22 would have to disclose the litigation to Olympus and Nationsbank and that disclosure of the information might prevent the closing.
When Boca Partnership provided notice to Olympus Boca and Nationsbank, they required Boca Partnership to borrow an additional $3 million at a 141/2 % annual interest rate as a reserve against the claims KSL asserted.
KSL contends that Boca Partnership’s counterclaim for tortious interference with contract must fail because the contract with Olympus Boca and Nationsbank was not final and binding, there was no breach and there were no damages. KSL further contends that its conduct was not wrongful because it did no more than fax a copy of a complaint that asserted bona fide claims and that KSL’s actions were intended to further its own legitimate interest in obtaining fees and reimbursement of its expenses pursuant to the letter of intent.
Boca Partnership counters that the wrongful conduct was not the commencement of the instant suit, but the faxing of the summons and complaint — which were dated October 11, 1994, and filed on October 11, 1994 — on October 10, 1994, prior to the filing of the suit and at the very time that KSL knew the closing was to occur. Boca Partnership also argues that the commitment letter between Olympus Boca and Boca Partnership was a binding contract. Indeed, Boca Partnership had paid a firm commitment fee of $500,000 on October 7, 1994. Further, Boca Partnership argues that a breach had occurred since Olympus Boca refused to go forward in the previously negotiated terms and insisted that another $3 million be borrowed as a reserve. Finally, Boca Partnership contends that it can earn only 4.5% on the reserve fund, and must pay 10% more than it earns on the fund over the course of nine years, an amount exceeding $1 million.
On a motion to dismiss for failure to state a cause of action, brought pursuant to CPLR 3211 (a) (7), the court "assumes the truth of the complaint’s material allegations and whatever can be reasonably inferred therefrom.” (McGill v Parker, 179 AD2d 98, 105 [1st Dept 1992].)[2] The motion for dismissal will fail if from the four corners of the pleading "factual allegations are discerned which taken together manifest any cause of action *23 cognizable at law”. (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977].)
In order to plead a cause of action for tortious interference with contractual relations, the pleadings must allege four elements: "(1) the existence of a contract between plaintiff and a third party; (2) defendant’s knowledge of the contract; (3) defendant’s intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff.” (Kronos, Inc. v AVX Corp., 81 NY2d 90, 94 [1993] [citations omitted].) The interference "must be intentional, not merely negligent or incidental to some other, lawful purpose”. (Alvord & Swift v Muller Constr. Co., 46 NY2d 276, 281 [1978].) The defendant’s acts must be without reasonable justification. (Supra, at 281-282.) However, actual malice is not a requirement. (A.S. Rampell, Inc. v Hyster Co., 3 NY2d 369 [1957].)
Boca Partnership has sufficiently alleged the existence of a contract between itself and Olympus Boca. A commitment letter can constitute a binding contract. (Teachers Ins. & Annuity Assn. v Ormesa Geothermal, 791 F Supp 401, 414-415 [SD NY 1991].) Further, Boca Partnership has adequately alleged that KSL was aware of the existence of the contract with Olympus. Theodore Fowler, president of defendant BRMC, L.P., states in his supplemental affidavit that he personally notified Michael Shannon of KSL of the existence of the Olympus commitment letter. Indeed, KSL in its complaint concedes that Fowler informed Shannon that Boca Partnership "intended to conclude a refinancing transaction with Olympus Real Estate Equity Partners, L.P. ('Olympus’).” Additionally, KSL’s faxing of a complaint demanding $2.5 million for Boca Partnership’s consummation of a competing transaction indicates KSL believed a competing transaction had occurred or was about to occur.
Boca Partnership has also sufficiently alleged that KSL intentionally induced a breach of the contract. As Boca Partnership explains, when the fax was transmitted the summons and complaint had not yet been filed with the court. Clearly, the fax was not a legitimate attempt to serve process. If KSL knew the closing was imminent or to take place simultaneously then the fax could have been sent to disrupt the refinancing.
KSL argues that to allege tortious interference with a contract, a party must allege improper conduct, and sending a fax is not an improper act. However, when a contract is for a definite term, "persuasion to breach alone” may constitute *24 interference. (Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183, 194 [1980].) It is not necessary that wrongful means, such as fraud or threats, be involved. (Supra.)
In the event the letter of commitment is not found to be a binding contract, Boca Partnership has alleged tortious interference with economic relations in the alternative. "[T]he culpable conduct necessary to state a cause of action to recover damages for interference with future contractual relations * * * is significantly higher than the conduct necessary for interference with present contracts.” (Jurlique, Inc. v Austral Biolab Pty., 187 AD2d 637, 638 [2d Dept 1992] [citation omitted].) There must be either the employment of "dishonest, unfair or otherwise improper” means or "the defendant’s sole purpose [must be] to damage the plaintiff” (Bankers Trust Co. v Bernstein, 169 AD2d 400, 401 [1st Dept 1991]).
In Guard-Life Corp. v Parker Hardware Mfg. Corp. (50 NY2d 183 [1980] supra), cited by both parties, the Court of Appeals held that generally "if no improper means have been employed, a competitor may not be held liable” for interference with prospective contractual relations. (Supra, at 187.) The Court explained that there is a societal interest in not unduly hampering competition. (Supra, at 190.) However, the counterclaim alleges that KSL was not competing with Boca Partnership to obtain a contract with a potential customer. Where there is a "lack of competitive motive” wrongful means are not required to constitute interference with prospective contractual relations. (Supra, at 193-194.)
Boca Partnership alleges that KSL’s purpose for transmitting the fax on October 10, 1994 was born of a vindictive desire to prevent Boca Partnership from obtaining financing from any other source once it spurned KSL’s offer and that, but for KSL’s actions, Boca Partnership would have had a more favorable contract with Olympus Boca. These allegations are sufficient to constitute a cause of action for interference with prospective economic relations.
The second counterclaim is for prima facie tort. The elements of a prima facie tort are: (1) the intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful. (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314.) "Central to the cause of action for prima facie tort is that the defendant’s intent ha[s] been solely to injure plaintiff”. (WFB Telecommunications v NYNEX Corp., 188 AD2d 257, 258 [1st Dept 1992] [emphasis in original], Iv denied 81 NY2d 709 [1993], supra.)
*25 KSL contends that it sent the fax to "further its own legitimate interests.” However, upon a motion to dismiss, the court’s inquiry is limited to whether a cause of action has been adequately pleaded. (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506.)
It may well be that KSL sent a fax of the not yet filed summons and complaint to try to force a settlement at the eleventh hour. However, that is a matter that cannot be addressed at this pleading stage. Accordingly, Boca Partnership’s allegations suffice to make out a cause of action for prima facie tort.
The third counterclaim has adequately alleged a cause of action for specific performance of the return of Boca Partnership’s "proprietary information.” The letter of intent states that Boca Partnership will provide KSL "access to the prospectus, books and records” of Boca Partnership "sufficient to permit the completion of KSL’s due diligence investigation of the business and obligations” of Boca Partnership. Impliedly, KSL was to have access to Boca Partnership’s books and records, but was obligated to return such records to Boca Partnership.
"The equitable remedy of specific performance is available in the court’s discretion generally when the remedy at law, damages, would be inadequate.” (Matter of Burke v Bowen, 40 NY2d 264, 267 [1976] [citation omitted].) Assuming KSL has retained any of Boca Partnership’s proprietary records, this is precisely the type of situation in which the return of the records, rather than the award of damages, would be appropriate.
Accordingly, it is ordered that plaintiff KSL’s motion to dismiss defendant Boca Partnership’s counterclaims is denied in its entirety; and it is further ordered that defendant Boca Partnership’s cross motion for an order lifting the automatic stay of disclosure, pursuant to CPLR 3214 (b), is denied as moot.

. Some negotiations occurred after the first letter of terminations was sent.

. However, " 'allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration.’ ” (WEB Telecommunications v NYNEX Corp., 188 AD2d 257, 259 [1st Dept 1992] [citations omitted], Iv denied 81 NY2d 709 [1993].)